UNITED STATES of America ex rel.
Alfred Curt von WOLFERSDORF,
Relator,

v.

W. C. JOHNSTON, M.D., individually and
as Director of Matteawan State
Hospital, Respondent.

No. 70 Civ. 3285.

United States District Court,
S. D. New York.

Aug. 31, 1970.

Bruce J. Ennis, N. Y. Civil Liberties Union, New York City, for relator.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondent, Stephen P. Seligman, Asst. Atty. Gen., of counsel.

## OPINION

FRANKEL, District Judge.

The 86-year-old relator, determined by the State almost 20 years ago to be "insane" and unable to stand trial on an indictment returned in February of 1951, is confined in Matteawan State Hospital, where the "criminally insane," see Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), and other "dangerous" persons are held. The State Department of Mental Hygiene has found that he is not dangerous and that he is suitable for commitment in a civil hospital. The Department says it would cheerfully transfer him to such a place but for New York Mental Hygiene Law § 70(1), McKinney's Consol.Laws, c. 27 which allows civil commitment only for people "not in confinement on a criminal charge * * *."

After seeking for many years to have the state courts lower that barrier, relator has applied here for a writ of habeas corpus. He seeks release from Matteawan, not that he may go free, but only that he may sojourn in the less disagreeable surroundings the State's health authorities would find appropriate except for the perdurably "pending" indictment. There is no question that the place where this relator is now held while he awaits death is vastly different from

—i. e., more miserable than—state hospitals for those civilly committed. See Neely v. Hogan, 310 N.Y.S.2d 63, 67–68 (Sup.Ct.N.Y.Co.1970). And while the State's representatives acknowledge his suitability in all medical respects for civil commitment, they are stoutly resigned to the prohibition they find in their Mental Hygiene Law. More than that, the State's Attorney General takes the firm position that relator's poignantly modest request, steadily rejected in state executive and judicial determinations, must suffer the same fate here.

The reasons adduced for that position have been studied with care. The study has not dissipated the court's initial surprise that the legal energies expended in this matter could not before now have produced the small mitigation relator seeks for the last days of his life. Cases like this could encourage the canard that Mr. Bumble was too generous by half when he suggested that "the law is a ass."

The few pertinent facts and the law are as follows: Relator and one Paonessa were indicted in 1951 for the kidnapping and murder of a 14-year-old boy. Paonessa over a period of months told a variety of inconsistent stories, but all tended to implicate our relator. The latter steadfastly maintained his innocence, requesting and taking a lie-detector test to establish it. As has been mentioned, however, he was found to be insane, and he has failed in repeated efforts to have himself held competent to stand trial. Paonessa was tried, convicted and (in 1953) executed.

When he brought the present application, relator asserted that Paonessa's death and other events over two decades have made it impossible for the State ever to try him on the still-pending indictment.[1] The Assistant Attorney General responded that the question whether the prosecution has evidence on which

to go to trial, though it is so patently relevant, ought to be considered "only * * * when and if the relator is able to stand trial."[2] Considering the aggravating circumstances of the case and the cogency of relator's position that the State probably lacks evidence on which to go to trial, the court ordered respondent to state with particularity whether a trial is deemed a genuine possibility and, if so, what kinds of specific evidence the State claims to have available. The total response by the Attorney General to that direction is a simple acknowledgment that

> "[d]ue to the loss of key witnesses such as the co-defendant and the passage of time it would * * * be highly unlikely that the [relator] could be brought to trial if he was found able to stand trial in the near future."

In all the circumstances, this court considers that "highly unlikely" in the quoted sentence is fairly construed to mean "out of the question." Invited to specify, the Attorney General mentions no speck of evidence on which relator could be tried. The relator, having failed steadily for 20 years to establish his competence to stand trial, is locked away in a place more likely to drive men mad than to cure the "insane." See United States ex rel. Schuster v. Herold, 410 F.2d 1071, 1078, 1079 (2d Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969). Nobody has suggested that we ought to weigh seriously the minuscule chance that he will ever become "competent" before he dies. And yet respondent perseveres in the argument that relator must stay where he is because he is "in confinement on a criminal charge * * *."

■ To block inquiry whether that conclusion comports with Federal Due Process, respondent's counsel tendered at oral argument what he called a

---

1. Only Paonessa's testimony incriminated the relator, and neither relator nor his attorney was ever able to cross-examine him about his widely varying accounts. It appears also that witnesses capable of giving possibly exculpatory evidence have disappeared or died.

2. Affidavit in Opposition, p. 6.

"slight" point that relator has not exhausted state remedies. An affidavit submitted for respondent thereafter concedes that relator has brought numerous state proceedings over many years, but insists that there *may* be more procedures by which to work more utter exhaustion. The details of the argument are not of great ·interest for present purposes. It remains "slight," as is amply shown in the able briefs for the relator. Moreover, it would be sufficient for a case like this in any event that the doctrine respondent invokes is not jurisdictional, but is only a counsel of wise deference to the demands of comity. E. g., Fay v. Noia, 372 U.S. 391, 430–433, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Other arguments in opposition to the petition are less substantial. Passing them, this court concludes that the petition must be granted for reasons capable of fairly brief statement:

■■ (1) Relator's incarceration among the "criminally insane" for 20 years because of his status as an insane defendant (presumed innocent) named in an untriable indictment violates his protection against cruel and unusual punishment as it is enforceable against the States under the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). That his confinement is "punishment"—in some ways worse than prison, United States ex rel. Schuster v. Herold, *supra*, 410 F.2d at 1078, 1080— is not questioned. To be sure, the concept of punishment usually comes into play *after* a trial, not before. But the difference is not one helpful to respondent.

(2) Without the specific ban of the Eighth Amendment, the shocking circumstances of relator's imprisonment would violate the Due Process Clause of the Fourteenth Amendment. A far shorter period (25 months) of federal confinement of a comparable nature evoked recently the obviously sound observation that there is "inherent unfairness and substantial injustice in keeping an unconvicted person in * * * custody to await trial where it is plainly evident his mental condition will not permit trial within a reasonable period of time." Cook v. Ciccone, 312 F.Supp. 822, 824 (W.D.Mo.1970); see also In re Harmon, 425 F.2d 916, 918 (1st Cir. 1970).

■ (3) Relator's counsel argues that the pending state indictment must be deemed a nullity because a trial upon it now would violate his right to a speedy trial. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Notwithstanding that the delay has not been the State's "fault," the argument is powerful. Cf. Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19 (1957). The court adopts it, but. solely as additional ground for the specific decision herein. That is to say (deferring to the technically sound but realistically imaginary premise of respondent that the permissibility of a trial is best determined if and when one is attempted), this court does not purport in more general terms to "dismiss" or otherwise erase the indictment. If the State should ever undertake to bring relator to trial, today's decision is not meant to foreclose (however much it may predict defeat of) a prosecution claim that such proceedings are consistent with the right to a speedy trial. All this court now holds, or needs to hold, is that for purposes of the concrete claim to elementary decency now ripe for decision, the implications of the federal right to have an indictment tried and done with forbid the gruesome use to which the State has put its pending charge.

While relator does not seek total release from state custody, the form of relief is no special problem. He seeks release from Matteawan, from the custody of the named respondent in charge of that institution, and this he is entitled to. Cf. United States ex rel. Schuster v. Herold, *supra*, 410 F.2d at 1071. Accordingly, the petition is granted, and respondent is directed to accomplish relator's release on or before September 6, 1970.

It is so ordered.