347 A.2d 465
**COMMONWEALTH of Pennsylvania**
**v.**
**John McQUAID, Appellant.**

Supreme Court of Pennsylvania.
Argued June 27, 1975.
Decided Oct. 30, 1975.

500

502

Albert Ominsky, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

504

ROBERTS, Justice.

This appeal arises from appellant John McQuaid's commitment in Farview State Hospital since 1960 because of his incompetency to stand trial. The hearing court held that appellant's confinement could be continued without a civil commitment hearing. We vacate the hearing court's order and remand for further proceedings.

Appellant was involved in a stabbing incident on March 7, 1960, and was subsequently charged with murder. However, on March 11, 1960, after a hearing in the Court of Common Pleas of Philadelphia, he was found incompetent to stand trial and was ordered committed. Appellant's first rehearing occurred on February 22, 1974, pursuant to his own motion to commence trial. Appellant was recommitted by the hearing court despite a contrary recommendation by the Psychiatric Division of the Probation Department.

On April 29 and May 3, 1974, the court held an additional hearing to determine what action if any should be taken pursuant to *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), which held that a defendant could not be committed indefinitely solely because he was incompetent to stand trial. At this hearing three medical experts testified that appellant, because of his paranoid schizophrenia, was potentially dangerous to himself and others and would probably never become competent to stand trial. Thus, appellant's incompetency caused what amounted to an indefinite commitment. However, the court, after considering differences in Pennsylvania and Indiana law, concluded that the rule in *Jackson* did not affect appellant's case. It ordered appellant committed until he either becomes competent to stand trial or ceases to be dangerous to himself or others.

Appellant raises three claims: (1) that his commitment cannot continue under section 408 of the Mental Health and Mental Retardation Act (hereinafter "section 408") [1] (which provides for the commitment of those charged with crime but found incompetent to stand trial); (2) that the fifteen year delay in appellant's trial violates his constitutional right to a speedy trial; and (3) that his commitment is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The hearing court denied relief on all three claims. We find appellant's first claim to be meritorious.

I

Appellant's first claim, that he may not be committed indefinitely under section 408, is based on the Supreme Court's decision in *Jackson v. Indiana, supra.* In that case, a mentally defective deaf mute charged with robbery was found incompetent to stand trial and was committed to a state mental institution, where he remained for three and a half years. The defendant could not read, write, or otherwise communicate, and the reviewing psychiatrists gave him little chance of gaining competency. Thus, his commitment under the incompetency law of Indiana was tantamount to an indefinite sentence.

Jackson challenged his commitment as a denial of both due process and equal protection. The Indiana statutory scheme permitted the indefinite pretrial commitment of persons charged with a criminal offense under standards for commitment and release that provided fewer safeguards than those applying to any other civil commitment. The United States Supreme Court held that such a scheme for allocating procedural and substantive safeguards to persons civilly committed was repugnant to the

1. Mental Health and Mental Retardation Act of October 20, 1966, special sess. No. 3, P.L. 96, art. IV, § 408, 50 P.S. § 4408 (1969).

equal protection clause of the Fourteenth Amendment.[2] Furthermore, the Court agreed that the commitment violated due process:

". . . a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding . . . or release the defendant."

*Jackson v. Indiana,* supra 406 U.S. at 738, 92 S.Ct. at 1858.

Our determination in this case depends on the proper interpretation of the commitment, release, and treatment standards contained in the civil commitment provision (section 406) and the incompetency to stand trial provision (section 408) of the Mental Health and Mental Retardation Act [3] and the applicability of *Jackson* to those standards. The hearing court held that these standards were sufficiently similar to avoid any violation of the rule in *Jackson.* We cannot agree. The two statutory sections serve different purposes, have different commit-

**2.** The Court relied on its decision in *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). There, an equal protection violation was found where a state prisoner was civilly committed at the end of his prison sentence without a jury trial, a requirement for all others so committed. The Court in *Jackson* concluded:
"If criminal conviction and imposition of sentence are insufficient to justify less procedural and substantive protection against indefinite commitment than that generally available to all others, the mere filing of criminal charges surely cannot suffice."
*Jackson v. Indiana,* 406 U.S. 715, 724, 92 S.Ct. 1845, 1851, 32 L. Ed.2d 435 (1972).

**3.** Mental Health and Mental Retardation Act of October 20, 1966, special sess. No. 3, P.L. 96, art. IV, §§ 406, 408, 50 P.S. §§ 4406, 4408 (1966).

ment and release standards, and must therefore be treated differently by the courts.

## Commitment Standards

 Section 408, under which appellant is committed, provides for the commitment of "a person who has been charged with crime [and] is detained in a penal or correctional institution . . . ." [4] The court must be

4. Id. Section 408 provides for the following commitment procedures and standards:

"(a) Whenever a person who has been charged with crime is detained in a penal or correctional institution and he is believed to be mentally disabled so that his commitment to a facility is necessary, a petition for such commitment may be presented to the court of the county where he stands charged with crime. The petition may be made by the warden or other officer in charge of the detaining institution, a relative of the detained person, the detained person or his counsel or the attorney for the Commonwealth.

"(b) To assist in determining the questions raised by the petition the court may adopt one or any combination of the following procedures:

(1) Appoint two or more physicians to examine the person in the detaining institution and make a report as to whether he is mentally disabled and whether his commitment is necessary.

(2) Appoint a commission consisting of two physicians and an attorney which shall examine such person in the detaining institution and in addition, receive any other evidence from any source bearing upon the questions of whether the person is mentally disabled and whether his commitment is necessary.

(3) Appoint an attorney to represent such person with reference to the petition.

(4) Hold a hearing which may be public or private. Appropriate notice thereof shall be given to all interested parties including the attorney for the Commonwealth. The presence of the person whose commitment is sought, may be compelled.

"(c) Any physician appointed by the court to examine such person may request the court to commit such person temporarily to a facility for a period not exceeding sixty days for further examination by such physician in conjunction with the staff of the facility.

"(d) After consideration of the petition and all evidence presented, the court may order the commitment of such person to a designated facility if satisfied that the person is mentally disabled and that his commitment is necessary. In making such order the court shall give due regard to the capacity of such person to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, to understand the nature of the

"satisfied that the person is mentally disabled and that his *commitment is necessary*" prior to committing the defendant to a mental facility.[5]

Section 102 [6] which defines "mental disability" in general terms, is applicable to both section 408 and section 406:

" 'Mental disability' means any mental illness, mental impairment, mental retardation, or mental deficiency, which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care as provided in this act. . . ."

However, in making this determination under section 408, the court must give "due regard" to:

"the capacity of such person to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceeding, to understand the nature of the punishment which might be inflicted upon him, to confer with his counsel

punishment which might be inflicted upon him, to confer with his counsel with reference to such proceedings, to make a rational defense, and the probable effect of the trial on such person's physical and mental condition."

Recent opinions suggest that, when there is evidence on defendant's incompetence, the court or a court appointed commission should conduct a hearing on the matter. *Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724 (1974); *Commonwealth v. Davis*, 455 Pa. 596, 317 A.2d 211 (1974); *Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974).

This Court has also stated that a person charged with crime and thought to be mentally ill should be represented by counsel if a commission is appointed and a hearing is held before that commission. *Commonwealth ex rel. McGurrin v. Shovlin*, 435 Pa. 474, 257 A.2d 902 (1969). But see also *Commonwealth v. Anderson*, 211 Pa.Super. 349, 236 A.2d 558 (1967). Thus, although the ultimate determination of a defendant's sanity remains with the trial court, it does not have unlimited discretion in the choice of procedures.

5. Id.
6. Id. § 102, 50 P.S. § 4102.

with reference to such proceedings, to make a rational defense, and the probable effect of the trial on such person's physical and mental condition." [7]

Trial of a defendant who lacks the capacity substantially similar to that described in this provision would violate due process standards. *Commonwealth v. Ware*, 459 Pa. 334, 349, 329 A.2d 258, 264 (1974); *Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973); *Commonwealth v. Bruno*, 435 Pa. 200, 205, n. 1, 255 A.2d 519, 522, n. 1 (1969); *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967).

Thus, section 408 has a distinct purpose. It makes no reference to the accused's "need of care or treatment" and applies only to a criminal defendant. The court's primary concern is the defendant's competency to stand trial. The court must give close attention to particular factors relating to the defendant's ability to stand trial in its determination whether he lacks the "customary self-control, judgment, and discretion in the conduct of his affairs." A defendant might easily lack "self-control, judgment and discretion" in the context of a criminal trial and yet be capable of caring for himself in his daily "affairs and social relations."

Commitment standards under section 406, on the other hand, differ significantly. The section applies to: "[any] person . . . believed to be mentally disabled, and in need of care or treatment by reason of such mental disability" without regard to an existing detention or criminal charge.[8] The court, in certain circum-

---

7. Id. § 408(d), 50 P.S. § 4408(d).

8. Id. § 406, 50 P.S. § 4406. Section 406 provides for the following commitment procedures and standards:
 "(a) Whenever a person is believed to be mentally disabled, and in need of care or treatment by reason of such mental disability, and examination of such person has been made by a physician or physicians, or for any reason the examination of such person cannot be made, a petition may be presented to the court of common pleas of the county in which a person re-

stances, may order a compulsory examination, and, if the examining physicians or the director of the facility in which the person is examined determine "that such person is in need of care at a facility . . . [, they] shall immediately report to [the] court which may order the commitment of such person for care and treatment."[9] No criminal charge is needed, and the court must make a general finding concerning a person's lack of "customary self-control, judgment and discretion in the conduct of his affairs and social relations." Unlike section 408, the question of the person's ability to stand trial on a criminal charge is irrelevant.

> sides or is, for his immediate examination or commitment to an appropriate facility for examination, observation and diagnosis.
>
> (1) The petition may be made by a relative, guardian, friend, individual standing in loco parentis or by the executive officer or an authorized agent of a governmental or recognized non-profit health and welfare organization or agency or any responsible person.
>
> (2) The petition shall set forth the facts upon which the petitioner bases his belief of mental disability and the efforts made to secure examination of the person by a physician.
>
> (3) Said court upon consideration of such petition shall: (i) issue a warrant requiring that such person be brought before said court; (ii) fix a date for a hearing which shall be as soon as the warrant is executed, and (iii) notify the parties in interest.
>
> (4) After hearing, said court may: (i) order an immediate examination by two physicians appointed by said court, or (ii) order the commitment of the person believed to be mentally disabled, to a facility for a period not exceeding ten days for the purpose of examination. If the examination can be accomplished by partial hospitalization said court may so direct.
>
> "(b) If, upon examination, it is determined that such person is in need of care at a facility, the examining physicians or director, as the case may be, shall immediately report to said court which may order the commitment of such person for care and treatment."

9. Id. Because this Court has imposed limitations on the hearing court's discretion under section 408 (see note 4, supra) it is unclear whether section 406, which also limits discretion and requires a hearing, has stricter procedural standards. However, the exact procedural requirements under each provision need not be determined here since, for the reasons stated infra, other differences in the two statutes make it necessary for us to vacate the hearing court's order.

Thus, although the two provisions may not be mutually exclusive, a person could be committable under section 408 but not under section 406.[10]

■ This conclusion is substantiated by other considerations. Because section 406 can be applied to any person without regard to criminality, at least two safeguards inapplicable to section 408 may be constitutionally required prior to any civil commitment. The hear-

10. The testimony at the hearing substantiates the importance of these differing standards. Dr. Sall, the first witness, testified:

"Q. Are you aware that [the type of commitment] is the particular purpose of this hearing today?

"A. Frankly I thought it was simply for competency."

Later, the same witness was asked:

"Q. . . . your examination dealt mainly with whether or not the [appellant] was competent to stand trial and had nothing to do with what type of institution he should be in, or what type of treatment he had gotten in the past, or whether the treatment had been adequate type of treatment, is that correct?

"A. Generally, that's so, to determine competency."

Dr. Kool, the second witness, also testified primarily on the question of competency:

"[Appellant] knew he was to be seen by a psychiatrist.

"He knew that it was relative to charges against him and he had some comprehension of the fact that there was a possibility of being found not guilty by virtue of insanity."

These two witnesses testified on the basis of single competency examinations. The third witness merely substantiated the testimony of the other two doctors.

The hearing court, despite this testimony, limited the importance of these competency factors and instead emphasized the requirement of "mental disability." We note that in *Jackson*, the Indiana statute apparently used "insane" and "incompetency to stand trial" interchangeably, yet the Court found that the sole purpose of the Indiana provision was to determine incompetency. *Jackson v. Indiana*, 406 U.S. 715, 720, 727, 92 S.Ct. 1845, 1849, 1852, 32 L.Ed.2d 435 (1972). This is the primary purpose of section 408 as well; the determination of comptency must necessarily influence whether defendant is mentally disabled and in need of commitment.

The ABA Commission on Standards of Judicial Administration also stress the importance of identifying the exact purpose of the particular proceeding because of the differing issues and standards involved and the resultant impact on the expert testimony. ABA Commission on Standards of Judicial Administration, Standards Relating to Trial Courts, § 2.72 and Comments (Tentative Draft, 1975).

ing court, recognizing this, held that mental deficiency must include a finding of dangerousness to oneself or others under either section 406 or section 408.[11] Dangerousness may well be a requirement for civil commitment;[12] however, it need not and should not be applied to section 408. A defendant's incompetency may be curable but not dangerous. The interests of both the Commonwealth and the defendant would be best served by having the defendant committed and treated in hope that he will become competent and the trial might then proceed. Requiring a finding of dangerousness would

11. The hearing court relied on *Dixon v. Attorney General of the Commonwealth of Pennsylvania*, 325 F.Supp. 966 (M.D.Pa.1971). However, that case involved a class suit challenging the validity of involuntary commitments under Mental Health and Mental Retardation Act of October 20, 1966, special sess. No. 3, P.L. 96, art. IV, § 404, 50 P.S. § 4404 (1969), which allows for commitment without a court hearing. The class consisted of those committed under section 404 "after the original authority for their confinement predicated on criminal convictions or charges had terminated . . . ." Thus section 408 commitments are expressly omitted.

Moreover, the hearing court ignored a large portion of that opinion. The federal court found section 404 unconstitutional on its face and ordered certain procedures to be followed prior to any new commitments of the complaining class. These included: (1) a full hearing where the subject has the right to counsel, the right to independent expert assistance, the right to present evidence and subpoena evidence, and the right to confront and cross-examine witnesses against him; (2) a court finding prior to any commitment, based on clear and convincing evidence, that "because of manifest indication[,] . . . the subject poses a present threat of serious physical harm to other persons or to himself;" (3) a court finding prior to any commitment to Farview State Hospital, based on the preponderance of the evidence, that such action is necessary and that "there is no facility or part of facility where the subject can be committed;" (4) a court specification of the maximum length of commitment, which cannot exceed six months; and (5) a verbatim transcript of the hearing.

12. See *O'Connor v. Donaldson*, 422 U.S. 563, 576, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975); *In re Ballay*, 157 U.S.App.D.C. 59, 482 F.2d 648, 656–62 (1973); *Lynch v. Baxley*, 386 F.Supp. 378, 390 (M.D.Ala.1974); *Lessard v. Schmidt*, 349 F.Supp. 1078, 1093 (E.D.Wis.1972), vacated and remanded on other grounds, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); *Dixon v. Attorney General of the Commonwealth of Pennsylvania*, 325 F.Supp. 966, 974 (M.D.Pa.1971).

cause the trial to be stayed indefinitely because a non-dangerous but incompetent defendant could not be committed and therefore would not receive potentially beneficial treatment. The Legislature intended no such result, as shown by its listing of the numerous competency elements, and the *Jackson* holding does not require otherwise.[13]

Moreover, involuntary commitment under section 408 requires a finding based only on the preponderance of the evidence. See *Commonwealth v. Davis*, 459 Pa. 575, 578, 330 A.2d 847, 848 (1975); *Commonwealth v. Kennedy*, supra, 451 Pa. at 487, 305 A.2d at 892. Although we have had no occasion to consider the burden of proof required for civil commitment, we note that numerous federal decisions have held that a stricter standard is constitutionally required. See, e. g., *In re Balley*, 157 U.S. App.D.C. 59, 482 F.2d 648 (1973); *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974); *Lessard v. Schmidt*, 349 F.Supp. 1078 (E.D.Wis.1972), vacated and remanded on other grounds 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); *Dixon v. Attorney General of the Commonwealth of Pennsylvania*, 325 F.Supp. 966 (M.D.Pa.1971).

Finally, the procedures prior to commitment under the two provisions have at least one significant difference

---

**13.** *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). The hearing court concluded that section 408 authorized both a short term confinement without a determination of dangerousness and a long term confinement with such a determination.

*Greenwood v. United States*, 350 U.S. 366, 76 S.Ct. 410, 100 L. Ed. 412 (1956), cited by the hearing court, does not support such an interpretation. In that case, the Supreme Court upheld only the "initial commitment" of an incompetent defendant; no equal protection claim was raised. Id. at 375–76, 76 S.Ct. at 415. Moreover, the *Jackson* Court, in its review of *Greenwood*, doubted that any "straightforward application" of federal incompetency statutes could be made to a defendant who has little chance of becoming competent. *Jackson v. Indiana*, supra 406 U.S. at 732–33, 92 S.Ct. at 1855, and cases cited therein. Thus, the hearing court's reading of section 408 does not avoid the issues presented here; moreover, we find no basis for its interpretation.

that is relevant here.[14] Section 408 provides a sixty day commitment for examination and section 406 provides only a ten day period.[15] The longer delay under section 408 can be justified because of the pending trial and the need for thorough examination; a person held under section 406 is not accused of any offense and a longer restraint on his liberty prior to the necessary finding cannot be justified.[16]

### Release Standards

The differing release standards also point to the differences in these sections. Section 408 is more restrictive of one's freedom than section 406. Under section 408, if commitment is ordered:

". . . the director shall detain the person so committed within the facility, provided, however, that if it is determined that partial hospitalization or out-patient care would be beneficial to the person so committed, such may be permitted by the court upon application therefore by the director and upon such terms and conditions as the court may direct, including the entry of bail to secure such person's return to the facility or his appearance." [17]

Section 406 provides:

"In its order of commitment, said court may permit partial hospitalization or out-patient care, or if at any

14. We need not reach the significance of other procedural differences in the two provisions. See supra note 9.

15. Mental Health and Mental Retardation Act of October 20, 1966, special sess. No. 3, P.L. 96, art. IV, §§ 406(a)(4), 408(c), 50 P.S. §§ 4406(a)(4), 4408(c) (1969).

16. At least one court has held that only a 48 hour detention for examination is justified under due process. *Lessard v. Schmidt*, 349 F.Supp. 1078 (E.D.Wis.1972), vacated and remanded on other grounds, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); see also *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974).

17. Mental Health and Mental Retardation Act of October 20, 1966, special sess. No. 3, P.L. 96, art. IV, § 408(e), 50 P.S. § 4408(e) (1969).

time thereafter the director shall determine such partial hospitalization or outpatient care to be beneficial to the person so committed, the same may be permitted by said court upon application by the director." [18]

Thus, section 408, unlike section 406, does not allow an initial order of partial hospitalization or outpatient care, and the director "shall detain" defendant. Moreover, this Court has held that, under section 406, the committing court cannot overrule the director's determination of partial hospitalization or outpatient care. *Commonwealth ex rel. DiEmilio v. Shovlin*, 449 Pa. 177, 295 A.2d 320 (1975). Under section 420,[19] the Secretary of the Department of Public Welfare may review and summarily discharge any noncriminal commitment if he finds that the committed person is no longer in need of care and treatment in a facility. The hearing court held that section 408 release standards are governed by the same standards as section 406.[20] Yet section 408 expressly gives the court the power to revise the director's application for release with "such terms and conditions as the court may direct, including the entry of bail to secure such person's return to the facility or his appearance." [21] To deny the court this power could seriously jeopardize the orderly disposition of the pend-

18. Id. § 406(b), 50 P.S. § 4406(b).

19. Id. § 420, 50 P.S. § 4420.

20. The court relied on section 418 for this conclusion. That provision states in pertinent part:
 "If no period is specified in a commitment, the person may be detained until care or treatment is no longer necessary, whereupon he shall be discharged, *or otherwise dealt with in accordance with the provision of this act.*" (Emphasis added.)
 Id. § 418, 50 P.S. § 4418. Although this applies equally to section 406 and section 408, it clearly makes an exception for the latter since the court must maintain custody to continue the trial. Moreover, the determination of "care and treatment" necessarily refers back to the type of commitment imposed. As discussed supra, at 470–471, the findings necessary for the two commitments are distinct.

21. Id. § 408(e), 50 P.S. § 4408(e).

ing trial. Moreover, section 420 does not apply to those committed under section 408.

## Treatment Standards

Finally, the hearing court and the Commonwealth argue that the treatment afforded appellant under either statute is identical. The record neither supports nor contradicts this contention, although most commentators and many courts disagree.[22] The Mental Health Act itself makes a distinction between the two commitments in the event of escape; under section 425,[23] one who leaves the institution while committed as incompetent to stand trial is guilty of prison breach while one who leaves while civilly committed is guilty of no crime. It can be inferred from this distinction that a section 408 commitment should involve stricter discipline and surveillance.[24]

22. See, e. g., *United States ex rel. von Wolfersdorf v. Johnston,* 317 F.Supp. 66 (S.D.N.Y.1970); *United States ex rel. McGurrin v. Shovlin,* 455 F.2d 1278, 1280 (3d Cir. 1972).

Commentators agree that the treatments depend on the type of commitment involved. Professor Caleb Foote states:

"It is probable that compared with civil patients the criminal insane are (1) afforded less treatment; (2) detained in stricter custody . . . ; and (3) less likely to gain release after making comparable progress toward recovery. . . . [T]here is little reason to question that a criminal pre-trial commitment will usually result in the poorest and most restrictive form of hospitalization."

Foote, A Comment on Pre-Trial Commitment of Criminal Defendants, 108 U.Pa.L.Rev. 832, 843 (1960). See also, Burt, Of Mad Dogs and Scientists: The Perils of the Criminal Insane, 123 U.Pa. L.Rev. 258, 274–75 (1974); Burt and Morris, A Proposal For the Abolition of the Incompetency Plea, 40 U.Chi.L.Rev. 66 (1972); Note, Hospitalization of Mentally Ill Criminals in Pennsylvania and New Jersey, 110 U.Pa.L.Rev. 78, 102–06 (1961) (dealing specifically with Farview State Hospital); Note, Incompetency to Stand Trial, 81 Harv.L.Rev. 454, 462 (1967).

23. *Mental Health and Mental Retardation Act of October 20, 1966,* special sess. No. 3, P.L. 96, art. IV, § 425, 50 P.S. § 4425 (1969).

24. The hearing court stated that the "criminal" label on incompetents is also irrelevant. This is a doubtful assertion. First, it probably affects the type of treatment given. See Foote, supra note 22. Second, it may be unconstitutional to make "criminal" a psychological status of a person not convicted of any crime. See *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); *United States v. Jackson,* 306 F.Supp. 4 (N.D.Cal.1969).

■ In summary, section 408's primary purpose is to facilitate the proper disposition of a criminal trial. Because it would be unconstitutional to try an incompetent defendant, the court must have the power to order a competency hearing and to commit the defendant to an appropriate facility for treatment. The treatment should aid the defendant to become competent, and the release standards should be interpreted in light of the pending trial. The policies underlying section 408 offer no justification for indefinite involuntary commitment, which may occur when it is found that the defendant will probably never be competent. Section 406, on the other hand, does not deal with criminal charges; the standards of commitment, release, and treatment are substantially different. It may require a more careful protection of a person's liberty, particularly since it authorizes indefinite confinement.

■ The *Jackson* holding is therefore controlling here. Appellant has been confined over fifteen years and has no better prospect of being released and tried than did the defendant in *Jackson*, who had been committed only three and a half years. We cannot conclude that appellant's commitment, treatment or potential release would or should have similar results under sections 406 and 408. Section 408 does not provide for indefinite commitment, and equal protection requires that appellant be afforded the safeguards of civil commitment prior to indefinite confinement. *Jackson v. Indiana*, supra. We hold, as mandated by *Jackson*, that a defendant may be committed under section 408.

". . . [only for a] reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." [25]

*Jackson v. Indiana*, supra, 406 U.S. at 738, 92 S.Ct. at 1858.

25. This result is compelled by U.S.Const. amend. XIV, § 1 and Pa.Const. art. I, § 9.

Appellant must either be committed under the civil commitment provisions of section 406 or be released.

## II

■ Appellant also claims that this fifteen year delay constitutes a denial of his sixth amendment right to a speedy trial, a fundamental right applicable to the states through the fourteenth amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *Commonwealth v. Jones,* 450 Pa. 442, 299 A.2d 288 (1972). He therefore argues that we must dismiss with prejudice the murder charge against him. We cannot agree.

■ The right to a speedy trial is necessarily relative and the length of delay, although a factor to be considered, is not dispositive. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974). This results, at least in part, from:

> ". . . the incompatibility of haste with the procedural safeguards designed to effectuate other rights of the accused and to insure he receives due process."

*Commonwealth v. Ware,* supra, at 345, 329 A.2d at 263; see *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). We must therefore engage in a "difficult and sensitive" balancing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo,* supra, 407 U.S. at 530, 533, 92 S.Ct. at 2192–93; *Commonwealth v. Ware,* supra, 459 Pa. at 346, 329 A.2d at 264; *Commonwealth v. Williams,* 457 Pa. 502, 506, 327 A.2d 15, 17 (1974); *Commonwealth v. Jones,* supra, 450 Pa. at 447, 299 A.2d at 291.

■ Normally, any delay of trial caused by the incompetency of the defendant is justified because it is

necessary for the protection of the defendant's right to a fair trial. *Commonwealth v. Ware,* supra, 459 Pa. at 347, 329 A.2d at 264.[26] Moreover, it is irrelevant whether a defendant asserts his right to a speedy trial while incompetent, since the Commonwealth is constitutionally restrained from proceeding to trial. *Commonwealth v. Ware,* supra, at 350, 329 A.2d at 264; *Commonwealth v. Bruno,* 435 Pa. 200, 205, n. 1, 255 A.2d 519, 522 n. 1 (1969). Thus, two of the four factors to be considered —reason for delay and defendant's assertion of his right —offer no support for dismissal of appellant's charges.

Nevertheless, the Supreme Court, in *Jackson v. Indiana,* supra 406 U.S. at 739–41, 92 S.Ct. 1858–59, suggests that a defendant may have a valid speedy trial claim even if the delay is caused solely by his incompetence. The Court refused to consider this issue only because it had not been presented to the state courts.

Other federal courts have suggested that a sufficient showing of delay and prejudice could create a valid speedy trial claim by one incompetent to stand trial. *United States ex rel. Little v. Twomey,* 477 F.2d 767, 770 (7th Cir. 1973); *Williams v. United States,* 102 U.S. App.D.C. 51, 250 F.2d 19, 21 (1957); *United States ex rel. Daniels v. Johnston,* 328 F.Supp. 100, 110 (S.D.N.Y. 1971). However, in *Little,* the court found that the defendant had been held for a "reasonable" period (sixteen months) and dismissed the appeal; in *Williams,* the court decided in favor of defendant, but it based its decision, at least in part, on prosecution delay prior to defendant's incompetence; and in *Daniels,* the court concluded that an eight and a half year delay, without a showing of "compelling" prejudice, did not constitute a denial of speedy trial. See also *United States v. Mills,* 434 F.2d 266 (8th Cir. 1970), cert. denied, 401 U.S. 925, 91 S.Ct. 908, 27 L.Ed.2d 828 (1971) (court excused an

26. See ABA Project on Standards for Criminal Justice, Standards Relating to Speedy Trial § 2.3(a) (Approved Draft, 1968).

eleven year postponement, which included both administrative and incompetency delay).

Appellant seeks support from *United States ex rel. von Wolfersdorf v. Johnston,* 317 F.Supp. 66 (S.D.N.Y.1970), which involved a defendant detained twenty years because of his incompetence to stand trial. The court held that defendant had a valid speedy trial claim. However, the only relief granted on that claim was a transfer from criminal to civil commitment (the same relief we have already granted in Part I of this opinion). The court refused to dismiss the indictment despite a strong showing of prejudice:

> ". . . this court does not purport . . . to 'dismiss' or otherwise erase the indictment. If the State should ever undertake to bring relator to trial, today's decision is not meant to foreclose . . . a prosecution claim that such proceedings are consistent with the right to a speedy trial. All this court now holds, or needs to hold, is that for purposes of the concrete claim to elementary decency now ripe for decision, the implications of the federal right to have an indictment tried and done with forbid the gruesome use to which the State has put its pending charge."

*United States ex rel. von Wolfersdorf v. Johnston,* supra at 68.

Thus, even if we assume that a long delay caused by appellant's incompetence might create a valid speedy trial claim, he must make a strong showing of prejudice.[27] Admittedly, a fifteen year delay is "presumptively prejudicial." *Commonwealth v. Ware,* supra 459 Pa. at 346, 329 A.2d at 264; *Commonwealth v. Wil-*

---

27. In *Blunt v. United States,* 131 U.S.App.D.C. 306, 404 F.2d 1283, 1287 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969), the court stated:

> ". . . where a principle cause of postponement is the deliberate pace of the system of safeguards designed to protect the accused, the courts have been exceedingly reluctant to find constitutional infirmity even in very long delays."

*liams,* supra 457 Pa. at 507, 327 A.2d at 17; *Commonwealth v. Hamilton,* 449 Pa. 297, 299–300, 297 A.2d 127–28 (1972). However, appellant must articulate the specific prejudices caused to his defense. *Commonwealth v. Ware,* supra 459 Pa. at 352, 329 A.2d at 265. He has failed to make any such showing here. The hearing court found that the records for his primary defense, insanity, are all preserved, and appellant does not allege that any key witnesses or other evidence are now unavailable. The evidence preserved is stale, but this does not automatically require a dismissal. *Commonwealth v. Ware,* supra at 349, 329 A.2d at 265. Although appellant asserts that he might raise other defenses which could be prejudiced by the delay, he fails to articulate the grounds for these proposed defenses or the nature of the exculpatory evidence that has been lost. This record is clearly insufficient to warrant a finding of a denial of speedy trial or a dismissal of the murder indictment.

This conclusion is supported by analyzing the rights which a speedy trial is intended to protect.[28] The Supreme Court has stated that the speedy trial claim is designed:

"(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."

*Barker v. Wingo,* supra 404 U.S. at 532, 92 S.Ct. at 2193. See *Commonwealth v. Williams,* supra 457 Pa. at 507, 327 A.2d at 17.

Our holding in Part I adequately protects appellant's first interest, preventing oppressive pretrial incarceration, and appellant makes little or no showing of serious

28. Professor Amsterdam urges that these interests should be analyzed to determine both whether there has been a denial of a speedy trial and, if so, what remedy should be granted. See Amsterdam, Speedy Criminal Trial: Rights and Remedies, 27 Stan.L. Rev. 525 (1975).

jeopardization of his third interest, the possible impairment of his defense. Thus, we are concerned only with the possible infringement of appellant's second interest, minimizing his anxiety and concern. We find that, on this record, the possible infringement of this interest is insufficient to justify a dismissal with prejudice of the murder charge.[29] Such a result would deny the Commonwealth the opportunity to try a serious offense and would be an unnecessary obstruction of public justice.

In his third claim, that of cruel and unusual punishment, appellant requests only the relief already granted to him in Part I. We therefore need not reach the merits of that claim.

The order of commitment under section 408 of the Mental Health and Mental Retardation Act is vacated; case is remanded for proceedings in conformity with this opinion.

EAGEN and POMEROY, JJ., concur in the result.

---

29. Professor Amsterdam argues that a mere dismissal without prejudice is a sufficient remedy if this is the only interest infringed. Amsterdam, supra note 28 at 535. However, such a remedy in this case would be of no value to appellant, since no statute of limitations applies to murder prosecutions.