STATE of Minnesota, Plaintiff,

v.

Charles Christian BAUER, Defendant.

No. 50128.

Supreme Court of Minnesota.

Sept. 5, 1980.

William R. Kennedy, County Public Defender, Franklin J. Knoll and Gerard W. Snell, Asst. Public Defenders, Minneapolis, Ranum, Quackenbush & Burke and Kevin S. Burke, Minneapolis, for defendant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Appellate Section, David W. Larson, Asst. County Atty., Minneapolis, for plaintiff.

Heard before SHERAN, C. J., TODD and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Defendant Bauer, against whom an indictment for murder arising out of a 1972 shooting incident is pending, has been found incompetent to stand trial for over 3½ years. On February 29, 1979, the Hennepin County Public Defender moved, on Bauer's behalf, to dismiss the indictment. The Hennepin County District Court certified to this court the question of whether the motion for dismissal should be granted. We answer the question in the negative.

Defendant Bauer has a history of mental illness dating back to his 1944 military discharge by reason of such illness. Early in 1972, the Hennepin County Probate Court issued an order to apprehend and confine Bauer pursuant to the emergency commitment provisions of the Probate Act. On February 4, 1972, Bauer shot and killed one of the police officers attempting to serve him with the commitment order.

Bauer was indicted for murder in the first degree. Although a public defender was appointed to represent Bauer, he insisted upon proceeding *pro se*. Bauer was found to be competent in proceedings held before this initial trial. At the trial, however, he would not allow the defense of insanity to be raised. Instead, Bauer argued that Minneapolis housing code inspectors had harassed him to the point where his pre-existing emotional disturbance was aggravated and erupted in the tragic shooting death of the officer. The jury returned a verdict of guilty of murder in the second degree.

This court reversed Bauer's conviction, holding that the trial court erred in refusing to re-open the question of Bauer's competency to stand trial upon motions made by the public defender during the trial. *State v. Bauer*, 310 Minn. 103, 245 N.W.2d 848 (1976). We remanded the case for a new trial, making it clear that new competency hearings should be held before any trial.

A competency hearing was held before the Hennepin County District Court on November 3, 1976. The district court ordered the probate court, pursuant to Minn.Stat. § 253A.07, subd. 30 (1976), to conduct a psychiatric evaluation of Bauer. On January 4, 1977, the probate court found Bauer to be incompetent, mentally ill and dangerous to the public, and returned him to the supervision of the district court. The district court repeated the findings that defendant was incompetent, mentally ill and dangerous in a commitment order of January 19, 1977. The order transferred custody of defendant to the Minnesota Security Hospital, ordered the hospital to report on defendant's status no less frequently than once every six months, and stayed the criminal proceedings pending the outcome of defendant's treatment.

On August 4, 1977, the director of the security hospital reported to the district court that Bauer was competent to stand trial. Before competency hearings could be held, however, Bauer's condition deteriorated severely; he became incontinent and barely ambulatory. He was transferred to Rochester State Hospital where his condition improved.

Bauer was later transferred back to the security hospital, and in July 1978, the director again certified him as competent to stand trial. The district court received additional reports from four psychiatrists, three of whom found Bauer incompetent to stand trial. All of the psychiatrists concurred in diagnosing Bauer as a paranoid schizophrenic. The court then held a competency hearing on February 27, 1979, at which one of these psychiatrists testified. Mr. Bauer appeared and cross-examined not only the psychiatrist and the county attorney, but also his public defenders. It is clear from the transcript of that hearing that Bauer refuses to accept the fact that he is mentally ill, will not allow an insanity defense to be raised, will not waive his right to a jury trial, and will not communicate openly with his public defenders.

The district court found as a fact that Charles Bauer is presently incompetent to

stand trial and has been so at least since August 1976. The court also found that Bauer had made little progress towards competency and that there is no reasonable likelihood he will ever become competent. Further, the court found substantial reason to believe a defense of not guilty by reason of insanity would be successful. Finally, the court found that Bauer's involvement with the criminal process has delayed and interfered with the treatment he needs for his mental illness. The court then certified the question of whether defendant's motion to dismiss the indictment should be granted.

Bauer's public defenders argue that the murder indictment pending against him should be dismissed:

1. As a violation of Bauer's rights to due process and equal protection;

2. As a violation of Bauer's right to a speedy trial; and

3. As a violation of Bauer's right to be free from cruel and unusual punishment.

1. Defendant's first argument is that the murder indictment should be dismissed on due process and equal protection grounds. The leading case on the due process and equal protection rights of incompetent defendants is *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In that case, a deaf–mute defendant charged with two simple robberies had been committed for 3½ years solely because of his incompetency to stand trial. The often–quoted holding of the case is:

> that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

*Id.* at 738, 92 S.Ct. at 1858. Jackson's commitment violated the Fourteenth Amend-

ment equal protection clause because he was subjected to a more lenient commitment standard and a more stringent standard of release than those generally applicable to all others not charged with offenses. *Id.* at 730, 92 S.Ct. at 1854. His commitment further violated the Fourteenth Amendment guarantee of due process because he was committed without consideration of any of the grounds for an indefinite civil commitment under state law. *Id.* at 737–38, 92 S.Ct. at 1857–58.

The defendant seeks to directly apply the holding of *Jackson* to his case, claiming that he has been incarcerated as an incompetent defendant pursuant to Minn.Stat. § 631.18 (1978) (repealed 1979). As the state points out, however, the district court's January 19, 1977, commitment order found Bauer to be not only incompetent to stand trial, but also mentally ill and dangerous to the public. *See* Minn.Stat. § 253A.07, subd. 17(c) (1978). Thus, Bauer has been civilly committed in accordance with due process principles and the Supreme Court's holding in *Jackson*.

The factors which have caused Bauer to be confined in the Minnesota Security Hospital, that he is mentally ill and dangerous, are the same as those used for others not charged with offenses. The conditions of Bauer's present confinement are governed by the Hospitalization and Commitment Act, Chapter 253A, as with any person civilly committed. The defendant may also apply for discharge from civil commitment under Minn.Stat. § 253A.15, subd. 2 (1978). Under Minn.R.Crim.P. 20.-01, subd. 5, however, the trial court must be notified of any proposed termination of the civil commitment which, of course, would not occur in the case of a person civilly committed but not charged with an offense. We see no equal protection violation in this procedural difference because the standards for release are the same regardless of which court makes the decision. Even if there were an arguable equal protection problem raised by this jurisdictional difference, it would be outweighed by the interest of the state in maintaining some jurisdiction in

the district court over a person accused of a serious crime such as murder. Thus, the holding of the *Jackson* case is not applicable to defendant Bauer.

■ More relevant than the actual holding in the *Jackson* case is the language in the last portion of the opinion dealing with Jackson's argument that fundamental fairness required the charges against him to be dismissed. The Supreme Court noted that, on the record before it, Jackson's claim for dismissal was substantial. *Jackson v. Indiana*, 406 U.S. 715, 739, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). However, the court refused to decide the issue because it was not ripe for ultimate decision for three separate reasons. *Id.*

First, the court rejected Jackson's argument that he had already made out a complete insanity defense, noting that the competency hearing below was not directed to criminal responsibility. *Id.* In this case, evidence as to Bauer's sanity at the time of the offense was taken at the competency hearing.

Second, the Supreme Court found that the arguments which usually justify dismissal of charges, namely the Sixth and Fourteenth Amendment right to a speedy trial or the denial of due process inherent in holding pending charges indefinitely over the head of one who will never have a chance to prove his innocence, had not been presented below in the state courts. *Id.* at 740, 92 S.Ct. at 1859. In this case, both arguments have been raised by the defendant.

The third reason which the *Jackson* court cited in refusing to determine whether the charges should be dropped was that the states should be allowed a chance to develop policies on this matter. *Id.* at 741, 92 S.Ct. at 1859. This third consideration obviously poses no bar to this court, and thus all three requirements for ripeness of the fundamental fairness argument are present here.

■ One of the substantive reasons articulated by the Supreme Court for dismissing indictments was that holding charges indefinitely over the head of one who will never

have a chance to prove his innocence is an inherent denial of due process. Bauer claims that the pendency of the indictment against him for 8 years is such an inherent denial of due process.

A similar argument was rejected by the Illinois court in *People v. Lang*, 76 Ill.2d 311, 29 Ill.Dec. 87, 391 N.E.2d 350, *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 326 (1979). This is one of many cases dealing with Donald Lang, the Illinois deaf–mute who was not mentally ill or mentally retarded but could not be taught the communication skills necessary to understand the charges against him or participate in his defense. The Illinois public defender argued that the murder indictments against Lang should be dismissed since he never had the chance to determine whether he in fact committed the offense. *Id.* at 329, 29 Ill.Dec. at 94, 391 N.E.2d at 357. Much as in this case, Lang had been found guilty at a trial which the court subsequently reversed due to Lang's lack of competency. Even though that conviction was reversed, the court found that the trial afforded an opportunity to determine whether or not Lang should be released as an innocent person. *Id.* at 330, 29 Ill.Dec. at 94–95, 391 N.E.2d at 357–58.

In this case, we need not rely on Bauer's initial trial to find that he should not be released as an innocent person. None of the parties in this case dispute the fact that Bauer committed the homicide he is accused of; Bauer himself admits the act. This is not a case in which there is any doubt whether the defendant committed the offense.

Rather, the only question in this case is whether Bauer should be found not guilty of the offense by reason of insanity. Bauer would not raise the defense of insanity at the first trial and will not raise it now; part of Bauer's mental illness is the fact that he refuses to admit he is mentally ill. If Bauer were to be acquitted by reason of insanity, however, he would be in the same position he is in now, namely, under civil commitment as mentally ill and dangerous. Minnesota law requires that civil commit-

ment proceedings be commenced against a defendant acquitted by reason of insanity and that any civil commitment be terminated only upon the order of the court committing him. Minn.R.Crim.P. 20.02, subd. 8(4). Since Bauer's present status is the same as if he had been acquitted by reason of insanity, the fact that this defense has not been raised creates no inherent denial of due process. Under the circumstances of this case, the pendency of the murder indictment against defendant violates none of his equal protection or due process rights.

2. The second reason which the *Jackson* case articulated as a justification for a dismissal of charges is a possible denial of the Sixth and Fourteenth Amendment right to a speedy trial. *Jackson v. Indiana*, 406 U.S. 715, 740, 92 S.Ct. 1845, 1859, 32 L.Ed.2d 435 (1972). Bauer asserts that his right to a speedy trial has been denied.

In determining whether a defendant's right to a speedy trial has been violated, the court must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether defendant asserted his right; and (4) prejudice to the defendant. *State v. Brouillette*, 286 N.W.2d 702, 706 (Minn.1979), citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The length of delay in this case since the actual shooting has been more than 8 years, which is clearly sufficient to trigger further inquiry. *State v. Enebak*, 272 N.W.2d 27 (Minn.1978); *State v. Corarito*, 268 N.W.2d 79 (Minn.1978).

The reason for the delay in this case, however, is the incompetency of the defendant. As the Pennsylvania court stated in a case where a defendant had been found incompetent for 15 years, "[n]ormally, any delay of trial caused by the incompetency of the defendant is justified because it is necessary for the protection of the defendant's right to a fair trial." *Commonwealth v. McQuaid*, 464 Pa. 499, 518–19, 347 A.2d 465, 475 (1975).

We also recognize, however, as did the Pennsylvania court, that a delay caused by the defendant's incompetence can cause severe prejudice to his defense. *Id.* at 519–21, 347 A.2d at 476. Therefore, the most crucial factor under these circumstances is whether or not the delay caused actual prejudice to the defendant. *See State v. Knox*, 311 Minn. 314, 328, 250 N.W.2d 147, 157 (1976). For example, in a case where the defense was insanity and the delay made it impossible to obtain the opinions of experts as to the sanity of the defendant at the time of the offense, the delay was prejudicial and the indictment was dismissed. *Williams v. United States*, 250 F.2d 19 (D.C.Cir. 1957).

In this case, it cannot be argued that the delay has in any way prejudiced Bauer's insanity defense. The district court found as a fact that the insanity defense would probably be successful. Three out of the four psychiatrists' reports rendered early in 1979 for the competency hearing discussed the defendant's insanity at the time of the shooting. It is also clear that Bauer himself remembers his own state of mind at the time of the shooting–he simply won't discuss it with his attorneys. Insufficient prejudice has been found in many cases: *Commonwealth v. McQuaid*, 464 Pa. 499, 347 A.2d 465 (1975) (no actual prejudice despite 15-year delay); *United States ex rel. Little v. Twomey*, 477 F.2d 767 (7th Cir. 1973); *People v. Lang*, 62 Ill.App.3d 688, 19 Ill.Dec. 231, 378 N.E.2d 1106 (1978), *modified* 76 Ill.2d 311, 29 Ill.Dec. 87, 391 N.E.2d 350, *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 326 (1979); *People v. von Wolfersdorf*, 66 Misc.2d 904, 323 N.Y.S.2d 88 (Duchess County Ct. 1971) (no prejudice despite delay of over 20 years).

Despite a delay of over 8 years, Bauer's right to a speedy trial has not been violated, as the delay is due to his own incompetence and has caused no prejudice to his insanity defense.

3. Finally, Bauer argues that maintaining the indictment violates his right to be free from cruel and unusual punishment. The United States Supreme Court has stated that it would be cruel and unusual pun-

ishment to make the status of being mentally ill a crime. *Robinson v. California*, 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962). The defendant argues that his confinement at the security hospital somehow makes his status as mentally ill a crime. This argument has no merit since Bauer would be confined in the Minnesota Security Hospital pursuant to his mentally ill and dangerous commitment even if no indictment were pending.

■ The defendant further argues that holding the charges over his head and thus causing his mental illness to worsen amounts to cruel and unusual punishment. Cruel and unusual punishment is usually found in cases where the conditions of confinement are not commensurate with the defendant's status. A federal court found that Mr. von Wolfersdorf's incarceration for 20 years among the criminally insane, when he had never been civilly committed, violated his right to be free from cruel and unusual punishment. *United States ex rel. von Wolfersdorf v. Johnston*, 317 F.Supp. 66 (S.D.N.Y.1970). Von Wolfersdorf was subsequently civilly committed under New York state law. Upon a motion to dismiss the indictment against von Wolfersdorf, the New York state court found untenable the argument that defendant's confinement pursuant to a civil commitment while having a criminal indictment pending constituted cruel and unusual punishment. *People v. von Wolfersdorf*, 66 Misc.2d 904, 906, 323 N.Y.S.2d 88, 90–91 (Duchess County Ct. 1971).

Bauer's case is analogous to the second *von Wolfersdorf* case. Bauer's confinement at the Minnesota Security Hospital is commensurate with his status as mentally ill and dangerous. He is confined in a setting designed to treat his mental illness to the greatest extent possible under the current state of medical knowledge. It cannot seriously be argued that the mere pendency of an indictment transforms the medical treatment Bauer is receiving into cruel and unusual punishment.

We therefore hold that the maintenance of this indictment violates none of Charles Bauer's constitutional rights and consequently that its dismissal is not constitutionally mandated. Whether the indictment should, nevertheless, be dismissed pursuant to the policies of this state, which the *Jackson* court recognized as extremely important, remains for discussion.

■ The Minnesota policy on the dismissal of criminal charges against incompetent defendants is embodied in Minn.R. Crim.P. 20.01, subd. 6:

> Except when the defendant is charged with murder, the criminal proceedings against him shall be dismissed upon the expiration of three years from the date of the finding of his incompetency to proceed unless the prosecuting attorney, before the expiration of the three–year period, files a written notice of his intention to prosecute the defendant when he has been restored to competency.

The specific exception for murder charges indicates that, as a general rule, charges of murder should not be dismissed. This rule is logically consistent with the fact that there is no statute of limitations on murder since murder is considered such a serious crime.

We further note that if Bauer were to be tried and acquitted by reason of insanity, which both the county attorney and public defender agree would be the appropriate disposition in this case, the district court would maintain supervision over the defendant's discharge:

> In felony and gross misdemeanor cases only, the trial court shall be notified of any proposed termination of the civil commitment, and the court, after notice to the parties, shall hold a hearing thereon. If the court determines that the defendant is mentally ill or deficient and dangerous to the public, the defendant shall not be discharged from civil commitment. Otherwise, the civil commitment shall be terminated and the defendant discharged therefrom.

Minn.R.Crim.P. 20.02, subd. 8(4). A person committed as mentally ill and dangerous but not subject to the jurisdiction of the

district court could be discharged upon a hearing before a special review board, a decision by the Commissioner of Welfare, and upon notice to the probate court, the county attorney of the committing county, the patient and his attorney. Minn.Stat. §§ 253A.14–.15 (1978). The grant of jurisdiction to the district court over the discharge of a person who has committed a serious offense offers an additional level of protection to the public since the district court is well acquainted with the defendant's history.

We believe that continued supervision by the district court is essential in this case.[1] As long as the indictment is maintained, the district court maintains control over the defendant's release. Minn.R.Crim.P. 20.01, subd. 5. If the indictment were to be dismissed, however, the district court would lose this jurisdiction. If the civil authorities then decided to release the defendant, he would be free to re–enter society without district court approval. Such an occurrence must be considered because the defendant has twice been certified by the director of the Minnesota Security Hospital as competent to stand trial, only to be brought to district court for trial and found in fact not competent to be tried.

We are of the opinion that if the defendant were to be released from civil commitment upon dismissal of an indictment, the county attorney could seek to reindict the defendant because there is no statute of limitations on murder. However, the defense undoubtedly would reassert the speedy trial issue at that point. This entire process could take a substantial period of time to litigate, and we do not deem such a

process as providing sufficient protection to the public.

We therefore find the dismissal of this indictment to be contrary to the policies of this state. We are concerned, however, about defense counsel's argument and the district court's finding that the indictment is interfering with Bauer's treatment for his mental illness.

We cannot understand why the defendant is not as susceptible to treatment, even with the pending indictment, as he would be if the indictment were dismissed but he faced possible reindictment. From statements made at oral argument, as well as the records of the competency hearings below, we believe it is the threat of immediate prosecution, with its attendant psychiatric evaluations and competency hearings, which impedes treatment. The fact that defendant was treated at Rochester State Hospital, resulting in a great improvement in his condition over that at the security hospital, seems to us to be adequate evidence that proper treatment can lead to improvement even though the indictment is not dismissed provided that the defendant is free of the worry of immediate prosecution.[2]

We believe that the director of the security hospital in St. Peter should direct efforts toward intensive long--range treatment of the defendant without any early attempt to certify him as competent to stand trial so that he will feel free of the immediate tensions of prosecution. We see no inherent inconsistency in combining treatment of a mental patient with protection of the public as well; that is the very purpose of having a secure mental institution at St. Peter.

1. We note that the State of New York has recently passed new legislation which expands the jurisdiction of their trial courts over persons found incompetent to be tried or acquitted by reason of insanity. The new legislation gives the courts power over the transfers and furloughs of the patients in addition to the power over their release which the courts already had. Thus, Minnesota is not the only state which values highly the expertise of the trial court in making decisions concerning these patients. *See* Act of June 26, 1980, ch. 548, § 11, 1980 N.Y.Sess.Law News 869, 873–

83 (McKinney) (to be codified as N.Y.Crim. Proc.Law § 330.20).

2. Defendant's transfer to Rochester State Hospital was ordered by the district court as an emergency response to defendant's grave condition. Transfers of a committed person from one institution to another can also be accomplished by order of the Commissioner of Welfare. Minn.Stat. § 253A.14, subd. 2 (1978). Such a transfer might be appropriate for Bauer if at some future time he is no longer dangerous to the public.

We thus answer the question certified to us in the negative.

SCOTT and WAHL, JJ., took no part in the consideration or decision of this case.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.