Ruth Appeal.

Submitted September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joseph M. Casey*, *Albert John Snite, Jr.*, and *John W. Packel*, Assistant Defenders, and *Benjamin Lerner*, Defender, for appellant.

*Richard P. Myers*, *Mark Sendrow*, and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for appellee.

OPINION BY HOFFMAN, J., March 29, 1976:
Appellant contends that his adjudication of delin-

quency of arson and conspiracy was improper for two reasons: first, because his confession was the "fruit" of his illegal arrest,[1] and second, because his confession was procured without a knowing and voluntary waiver of his *Miranda* rights.

On January 19, 1975, a Penn Central railroad car at Whitaker and Luzerne Streets, Philadelphia, was set on fire and destroyed. Officer Robert Kriza, a security officer employed by the Penn Central Transportation Company, was dispatched to investigate the causes of the fire. During the officer's investigation, an unidentified individual informed him that a group of boys had been playing by the railroad tracks earlier that evening. The citizen-informer described two of the boys as follows: one was wearing a blue jacket, blue pants, and a red knit cap, and the other was wearing a blue jacket and light blue ski cap. Approximately one hour later, Kriza spotted the appellant and three other boys, two of whom matched the informer's description. The four boys told the officer that although they were not responsible for the fire, they had heard that a boy named "Train" set it. The boys agreed to help the officer find "Train," but they were unable to locate him after driving around the neighborhood for forty-five minutes. Kriza then drove the boys to the police station so that they could repeat their information. At the police station, the boys were separately questioned by Juvenile Aid Officer Dougherty. Believing the boys to be suspects, Officer Dougherty gave each boy his *Miranda* warnings before commencing interrogation. During his one-half hour interrogation, the appellant, age fourteen, confessed to starting the fire with "Train."

On May 29, 1975, appellant filed a motion to suppress his confession, which was denied. At his hearing in Juvenile Court, appellant was adjudicated delinquent of

---

1. Because we have determined that appellant's confession should have been suppressed, we need not reach this issue.

arson and conspiracy. Appellant's oral post-trial motions were denied and he was placed on probation.[2]

It is well-established that the Commonwealth has the burden of proving, by a preponderance of the evidence, that an accused's confession was secured after a knowing, intelligent, and voluntary waiver of his constitutional rights. *Commonwealth v. Starkes*, 461 Pa. 178, 335 A. 2d 698 (1975); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A. 2d 892 (1975); *Commonwealth v. Fogan*, 449 Pa. 552, 296 A. 2d 755 (1972). A confession is voluntary if it is determined that the confession is "the product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). See also *Commonwealth v. Goodwin*, supra. Where the accused is a child of tender years, courts have recognized that the attending circumstances must be closely scrutinized before a knowing, intelligent, and voluntary waiver is declared. *Commonwealth v. Fogan*, supra; *Commonwealth v. Porter*, 449 Pa. 623, 294 A. 2d 890 (1972). "Specifics such as age, intelligence, mental and physical development of the minor suspect are relevant factors in a determination as to whether or not the admissions were the product of a free and unfettered will and made only after a full appreciation of the rights that protect him." *Commonwealth v. Starkes*, supra at 185, 335 A. 2d at 701.

Although our Supreme Court has not announced a prophylactic rule that all juveniles are legally incapable of knowingly, intelligently, and voluntarily waiving their constitutional rights and confessing without the advice of an adult,[3] *Commonwealth v. Webster*, 465 Pa. n.5, 353

---

2. Appellant's oral post-trial motions were made in accordance with Rule 1123(b) of the Pennsylvania Rules of Criminal Procedure.

3. In *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A. 2d 669 (1975); and *Commonwealth v. Riggs*, 465 Pa.     , 348 A.2d 429 (1975), our Supreme Court reversed the convictions of two minors for the sole reason that they were not given the benefit of parental or interested adult guidance prior to their confessions. However, in *Commonwealth v.*

A. 2d 372, 378 n.5 (1975); *Commonwealth v. Moses*, 446 Pa. 350, 287 A. 2d 131 (1971), recent decisions have stressed the importance of such advice.

In *Commonwealth v. Roane*, 459 Pa. 389, 394, 329 A. 2d 286, 288 (1974), the Court stated: "An important factor in establishing that a juvenile's waiver of his constitutional rights was a knowing and intelligent one would be evidence that, before he made his decision to waive those rights, he had access to the advice of a parent, attorney, or other adult who was primarily interested in his welfare."

The Court in *Commonwealth v. Starkes*, supra at 188, 335 A. 2d at 703, noted that the mere presence of an interested adult is not enough: "[W]here the adult is ignorant of the constitutional rights that surround a suspect in a criminal case and exerts his or her influence upon the minor in reaching the decision, it is clear that due process is offended. An uninformed adult present during custodial interrogation presents an even greater liability.... Unless we require police officers to also advise parents, who are in the position to counsel minor suspects during custodial interrogation, we will not only fail to assure the full benefits sought to be obtained by this type of counseling but we will also increase the likelihood that the suspect will be misinformed as to his rights."

---

*Webster*, supra, our Supreme Court specifically rejected the thesis that all confessions of minor offenders must necessarily be rejected because of the lack of parental or interested adult guidance. Cases subsequent to *Webster*, however, apparently have repudiated this statement and have held juvenile confessions obtained without the benefit of interested adult guidance *per se* inadmissible. See *Commonwealth v. Chaney*, 465 Pa.    , 350 A.2d 829 (1975); *Commonwealth v. Smith*, 465 Pa.    , 350 A.2d 410 (1976); *Commonwealth v. Stanton*, 465 Pa.    , 351 A.2d 663 (1976). For the purposes of this opinion, we need only note the great importance of parental or interested adult guidance. In addition, however, the appellant was abnormal, confused, and in a situation beyond his comprehension. See *Commonwealth v. Crosby*, 464 Pa. 337, 346 A.2d 768 (1975).

458

Finally, in *Commonwealth v. Webster*, supra at    ,
353 A. 2d at 378, the Court stated: "It is clear from these
cases that not only may the Commonwealth not interfere
with the right of a minor suspect to consult with a parent
or guardian throughout the interrogation process, more
importantly, *police officials must make a reasonable effort*
*to provide an opportunity for the youthful accused to*
*confer with and receive the benefit of counsel or an*
*interested and informed adult guidance before permitting*
*him to elect to waive these important constitutional rights.*"
(Emphasis supplied).

In the instant case, the appellant was fourteen years
old at the time of his arrest. The following testimony
regarding his demeanor is instructive.

"Q. Okay. How did David appear to you Lieutenant
Kriza? Did he appear slow?

"A. Yes, very ....

"Q. Lieutenant Kriza, did David appear retarded to
you?

"A. Well, I'm no judge of that, but he certainly didn't
seem normal, for lack of a better term.

"Q. Could you describe to the Judge how he seemed.
He didn't seem normal, how exactly did he seem?

"A. Confused. It seemed to me that he was a kid that
was a follower. That's the impression that I got.

"Q. You said he was confused. What led you to that
conclusion?

"A. Just the whole thing seemed to — everything that
was happening seemed to be too much for him to
comprehend ....

"Q. Would you describe his condition as passive or
lethargic?

"A. No, no. Just slow. Again, you know, I can't
pinpoint it but —

"Q. All right.

"A. Well, let me say this: He responded to all the
questions, but it seemed that he had to — not think about

it, think what to say, just that he seemed confused as to what to say, not to think up something to say, just that he seemed slow ....

"Q. It appeared to you that for some reason he was incapable of coming out with an immediate answer to the question?

"A. Yes. And I got the impression not because he was trying to lie but because he just couldn't get it out ...."

The above testimony depicts the appellant as "slow," "confused," and "abnormal." The advice of an interested adult in this situation would have been most desirable. The police, however, made no effort to contact the appellant's parents until after the interrogation had begun. Applying the criteria as set forth by our Supreme Court, we find that the Commonwealth has not satisfied its burden of proving a knowing, intelligent, and voluntary waiver of appellant's constitutional rights.

· Reversed and remanded for a new trial.

VAN DER VOORT, J., concurs in the result.