368 A.2d 1261

COMMONWEALTH of Pennsylvania

v.

Albert HAILEY, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued June 30, 1975.

Decided Jan. 28, 1977.

Eugene A. Spector, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

492

## OPINION

NIX, Justice.

Appellant, Albert Hailey, was arrested on May 31, 1973, shortly after the shooting of two youths in the vicinity of 30th and Oakdale Streets, Philadelphia, during a gang-related incident. Melvin Wilcox, Jr., was shot twice through the heart and died as a result of these wounds. The other injured youth, Norman Dugan, was shot in the back and shoulder. Although Dugan fortunately recovered, he nonetheless sustained some paralysis as a result of the injury. Hailey was indicted and tried as a participant in this incident and a verdict of guilty of murder of the first degree was returned by the jury. He was also convicted of assault with the intent to kill for the shooting of Dugan. After disposition of post-verdict motions, a sentence of life imprisonment was imposed under the murder indictment. Sentence was suspended on the assault indictment. This direct appeal followed.[1]

It is our judgment, after careful consideration of the record, briefs and arguments presented in this cause, that a new trial must be awarded. However, since appellant also asserts that he is entitled to have one or both of the instant indictments dismissed and that the appropriate remedy is his discharge, we will consider these questions before reaching a discussion of the grounds upon which a new trial is now being awarded.

## I. SPEEDY TRIAL CLAIM

 It is asserted by appellant that the indictments against him must be dismissed because of a violation of

1. The appeal from the judgment of sentence imposed under the murder indictment is being entertained by this Court pursuant to the Appellate Court Jurisdiction Act of 1970, July 31, 1970, P.L. 673, No. 223, art. II, § 202(1); 17 P.S. 211.202(1). The appeal from the judgment of sentence under the assault indictment was taken to the Superior Court and transferred to this Court for consideration and disposition.

the speedy trial rights accorded him under the Federal and State Constitutions.[2] Specifically, he states that the expiration of 271 days between his arrest and the commencement of trial, being in excess of the 270-day maximum limit provided under Section (a)(1) of Rule 1100, requires the granting of the requested relief. While ostensibly conceding the inapplicability of Rule 1100, which was not in effect at the time of the filing of the complaint in the instant action,[3] appellant ingeniously argues that our decision in *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972), which first announced our intention to promulgate a presumptive rule, was in fact an expression of the requirements of the Pennsylvania Constitution at the time of that decision. This proposition is clearly erroneous. Prior to the adoption of Rule 1100 (June 8, 1973), this Court consistently examined speedy trial claims, whether asserted under the Sixth and Fourteenth Amendments to the United States Constitution or under Article I, Section 9 of the Pennsylvania Constitution, in accordance with the formulation articulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116 (1972).

The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States

**2.** The Sixth Amendment of the United States Constitution was held binding on the states through the Fourteenth Amendment in *Klopfer v. State of North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Article I, Section 9 of the Pennsylvania Constitution reads:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.

**3.** Section (a)(1) of Rule 1100 was made applicable only to cases in which the criminal complaint was filed against the accused "after June 30, 1973, but before July 1, 1974."

Constitution and Article I, Section 9 of the Pennsylvania Constitution, P.S. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court of the United States enumerated four factors which are to be balanced in determining whether an accused has been denied his right to a speedy trial: "Length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. This Court has assiduously followed these guidelines. *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974); *Commonwealth v. Williams,* 457 Pa. 502, 327 A.2d 15 (1974); *Commonwealth v. Pearson,* 450 Pa. 467, 303 A.2d 481 (1973); *Commonwealth v. Jones,* 450 Pa. 442, 299 A.2d 288 (1973); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). (Footnote omitted). *Commonwealth v. Lee,* 460 Pa. 374, 379, 333 A.2d 773, 776 (1975).

There can be no question that in this Commonwealth after the United States Supreme Court's decision in *Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967), the federal and state speedy trial protections were considered as being co-extensive and that a claimed violation of either or both would be assessed based upon the *Barker v. Wingo, supra* formulation. Although our decision in *Commonwealth v. Hamilton, supra,* indicated our intention of promulgating a presumptive rule for this jurisdiction, that did not in fact come to pass until the adoption of Rule 1100. In *Hamilton, supra,* although we discussed the advisability of providing additional protection to those accused of crime in this Commonwealth, we nonetheless considered the claim therein presented in view of the *Barker v. Wingo, supra* test. *See generally, Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976). It was made clear in the opinion in *Hamilton, supra,* under the

language of Rule 1100 and in a number of subsequent decisions that these additional safeguards were to be applied *only* prospectively. *Commonwealth v. Bailey*, 463 Pa. 354, 361, 334 A.2d 869, 873, n. 6 (1975); *Commonwealth v. Lee, supra,* n. 2. Most recently in *Commonwealth v. Brown*, 470 Pa. 274, 368 A.2d 626 (filed October 8, 1976), this Court again stressed the prospective application of the mandates of Rule 1100. In rejecting a claim that Section (e) of Rule 1100 had retroactive application, we stated:

"Appellant argues that the prospective application of Rule 1100 is applicable only to original trials and does not apply to paragraph (e) which pertains to retrials. This argument is premised upon the fact that paragraphs (a)(1) and (a)(2) of the Rule expressly set forth the effective dates of their operation and paragraph (e) fails to contain such a declaration. The argument fails however to recognize the clear intention that the *entire Rule was only to be given prospective application. The accompanying explanatory note and the comment to the Rule both expressly provide that the provisions of the Rule should be effective prospectively from the date of the adoption of the Rule, June 8, 1973.* See, also, *Commonwealth v. Bailey*, 463 Pa. 354, 361, n. 6, 344 A.2d 869, 873, n. 6 (1975); *Commonwealth v. Lee*, 460 Pa. 374, 379, n. 2, 333 A.2d 773, 776, n. 2 (1975); *Commonwealth v. Roundtree*, 458 Pa. 351, 355, n. 6, 326 A.2d 285, 287, n. 6 (1974)." (Emphasis added).

*Id.* at ——, 368 A.2d at 628–629.

Thus, the provisions of Rule 1100, including the application of the presumptive time limit in which a defendant must be tried, were not the law of this Commonwealth under the Pennsylvania Constitution at the time *Hamilton, supra* was decided, nor can it be considered as being operative to the instant factual situation.

496

Since appellant has argued in the alternative that he is entitled to relief under the *Barker* test, a short review of the relevant facts is necessary at this juncture.

On June 4, 1973, four days after his arrest, appellant was arraigned on charges that he had committed murder, assault with intent to kill and other offenses. On that same day a juvenile petition was filed charging these same offenses, neglecting, however, to name specifically the victim of the assault with intent to kill, Norman Dugan. After a hearing held on June 15, 1973, the Juvenile Court certified the cause to the Court of Common Pleas for trial. Indictments were thereafter returned at the July 1973 Term of the Court of Common Pleas charging appellant with offenses relating to both victims, Dugan and the deceased Wilcox. In September of 1973, on motion of appellant, a three-day pre-trial suppression hearing was conducted to determine the admissibility of certain written and oral statements of appellant. The request was denied and on October 9, 1973, the matter was marked ready for trial. A date of January 29, 1974, was assigned for trial; however, on that date the case, with the acquiescence of the defendant, was continued, presumably due to the unavailability of a courtroom. The trial was rescheduled for February 26, 1974, and on that date, did in fact begin. Meanwhile, on January 31, 1974, appellant filed a motion challenging the July indictments relating to the shooting of Norman Dugan on the grounds that these matters were never properly certified to the Criminal Division of the Court of Common Pleas. On the same day the Commonwealth filed a new juvenile petition charging Hailey with the crimes relating to the wounding of Dugan. A certification hearing was held on that petition on February 5, 1974, and the matter was certified to the Criminal Division. Thereafter, the February Term, 1974 Grand Jury returned a second set of indictments alleging appellant had committed crimes against Norman Dugan. On February 25, 1974, appel-

lant filed a motion to quash the newly-returned indictments on the basis of a violation of Rules 316(a) and 140(f) of the Pennsylvania Rules of Criminal Procedure. On February 26, 1974, appellant was called to trial on both the July 1973 and February 1974 indictments. On March 4, 1974, the trial judge granted appellant's motion to quash the July Dugan indictments, but denied the motion to quash the February Dugan indictments. The Commonwealth proceeded to trial on the July Wilcox indictments and the February Dugan indictments.

In *Commonwealth v. Pearson*, 450 Pa. 467, 472, 303 A.2d 481, 483 (1973), we described the sensitive balancing test that is required when weighing the significance of the four elements of the *Barker* test:

"In determining if the constitutional right to a speedy trial has been violated, each case requires an analysis of the circumstances and a consideration of the rights of society, as well as those of the accused to be protected from undue and oppressive pre-trial incarceration." (citations omitted).

 We conclude, after application of the four guidelines to the facts of this case and after balancing the rights of society with those of the accused, that appellant has not been denied his right to a speedy trial.

The length of the delay is the first category which we must analyze. In *Commonwealth v. Williams*, 457 Pa. 502, 506–07, 327 A.2d 15, 17 (1974), citing *Barker, supra*, 407 U.S. at 530, 92 S.Ct. at 2192, we agreed that the length of the delay before a trial is the "triggering mechanism" in determining whether the accused's rights have been violated: "When a delay is so extensive that a court considers it presumptively prejudicial, inquiry into the three other factors is necessary." It is conceded that appellant was called to trial 271 days from the time he was arrested, and 267 days from the time the first juvenile petition was filed. We need not decide that this delay

was "extensive" or "presumptively prejudicial" within the *Barker* standards since our investigation into the remaining three factors convinces us that the right to a speedy trial has not been denied.[4] *See Commonwealth v. Bailey, supra,* 463 Pa. at 361, 344 A.2d at 873.

The second consideration to which our attention is directed is the reason for the delay. The eight months which passed between appellant's arrest and the original trial date of January 29, 1974, was consumed by routine judicial processing, presentment of bills to the Grand Jury, disposition of appellant's pre-trial motion, and a pre-trial conference. In *Commonwealth v. Ware,* 459 Pa. 334, 347, 329 A.2d 258, 264 (1974), we concluded that a period of 33 months which was dedicated to pre-trial proceedings was justifiable so long as the various motions and appeals were not made for the purpose of delay, regardless of whether or not the moving party was the appellant attempting to vindicate his constitutional rights. *See* ABA Project on Standards for Criminal Justice, Standards Relating to Speedy Trial Section 2.-3(a) (Approved Draft 1968).[5]

**4.** Since Pennsylvania Rule 1100 was promulgated with a view of providing defendants protection in addition to that guaranteed by the United States Constitution, it is difficult to perceive that one day in excess of the limits of this rule would be "presumptively prejudicial." In fact almost all the delays which have been held to be "triggering mechanisms" have been far in excess of 271 days. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ("well over five years"); *Commonwealth v. McQuaid,* 464 Pa. 499, 347 A.2d 465 (1975) (15 years); *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974) (117 months); *Commonwealth v. Williams,* 457 Pa. 502, 327 A.2d 15 (1974) (3½ years); *Commonwealth v. Roundtree,* 458 Pa. 351, 326 A.2d 285 (1974) ("over six years"); *Commonwealth v. Jones,* 450 Pa. 442, 299 A.2d 288 (1973) (32 months); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972) ("almost six years").

**5.** 2.3 Excluded periods.
 The following periods should be excluded in computing the time for trial:
 (a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trial of other charges.

As to the 30-day delay which resulted from the continuance on January 29, 1974, the parties assign different reasons. Appellant alleges that the error of the Commonwealth in failing to have the Dugan charges properly certified was the cause of the continuance and that if this inadvertent omission had not occurred, the trial would have promptly proceeded on January 29, 1974. There is, however, no support in the record for appellant's contentions. It is true that by the first trial date nothing had been done by appellant to challenge either the certification proceedings of June 15, 1973, or the July indictments. In fact, it was not until January 31, 1974, two days later, that appellant filed a motion to quash the allegedly faulty July Term Dugan indictments. Even assuming that it is appropriate to assign any delay occasioned by the pre-trial process to the Commonwealth, we find no such delay in this case. The disposition of these motions did not in fact impede the progress of the litigation. Rather, the court took these motions under advisement at the time the rescheduled trial had commenced. There is nothing in the record to show that the consideration and the disposition of these motions impeded the course of the trial.

The Commonwealth points to the fact that no courtroom was available in which to hear the matter on January 29, 1974, as the reason for the continuance and hence the 30-day delay in reaching trial. In *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, the Court discussed several examples of reasons for delay:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circum-

stances must rest with the government rather than with the defendant.

Since appellant has not contended that the Commonwealth has deliberately delayed the trial with a view to impairing the defense, the judicial delay occasioned by the unavailability of the courtroom should be weighed "less heavily" against the Commonwealth in the balancing test. In *Commonwealth v. Lee, supra,* 460 Pa. at 380, 333 A.2d at 776, we minimized the weight afforded in the appellant's favor when a continuance has been granted, with his acquiescence, because of a busy court calendar:

> As far as the reasons for the delay are concerned, it is apparent that appellant has little cause for complaint, as two of the three continuances were at the behest of his own counsel, and the third, *necessitated by the heavy court workload, was made with his acquiescence.* (emphasis added).

*See* ABA Project on Standards for Criminal Justice, Standards Relating to Speedy Trial, *supra,* Section 2.-3(c).[6]

. . . . . . . .

Thirdly, we must inquire as to whether the appellant asserted his right to a speedy trial. Although trial officially began on February 26, 1974, at no time prior to that date or after that date, until March 4, 1974, when the trial reconvened with a decision on the motions to quash the Dugan indictments, did appellant assert his rights. The United States Supreme Court, in discussing the significance of the failure of an accused to demand trial, has set forth the following considerations:

> We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right.

6. 2.3 Excluded periods.
 The following periods should be excluded in computing the time for trial:
 (c) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel.

This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.

*Barker v. Wingo, supra,* 407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–116.

Our cases have accepted the principle that where an accused has had the benefit of counsel during the alleged period of delay and has failed to register a complaint, that failure, in the absence of circumstances to the contrary, may be interpreted as an acquiescence in that delay. *Commonwealth v. Ware, supra,* 459 Pa. at 349–50, 329 A.2d at 266; *Commonwealth v. Roundtree,* 458 Pa. 351, 326 A.2d 285 (1974); *Commonwealth v. Gates,* 429 Pa. 453, 240 A.2d 815 (1968); *Commonwealth ex rel. DeMoss v. Cavell,* 423 Pa. 597, 225 A.2d 673 (1968).[7] Under the circumstances of this case, there is

7. Such an inference is permissible under the language in *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182, at 2192, 33 L.Ed. 2d 101, at 117, 118 (1972):

"The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

an ample basis to conclude that the purported delays were not contrary to the wishes of appellant. This conclusion is bolstered by the fact that the denial of a speedy trial was first claimed after the trial did, in fact, commence.

Finally, we turn to the important question of whether the defendant has suffered prejudice as a result of the delay before trial. The interests of the appellant which the right to a speedy trial was intended to protect were elucidated by the Supreme Court in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. (Footnote omitted).

The appellant has made no claims that he was prejudiced by oppressive pre-trial incarceration (*see Commonwealth v. Bailey, supra*), that he has endured anxiety and concern of a substantial degree (*see Commonwealth v. Ware, supra,* 459 Pa. at 348–49, 329 A.2d at 265), or that he has been prejudiced in the preparation of his defense. Unlike the situations in *Commonwealth v. Lee, supra,* and *Commonwealth v. Williams, supra,* there have been no complaints of "dead, forgetful or unavailable witnesses" which would seriously impair the defense. *See Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182. The sole ground on which appellant bases his allegation that prejudice has occurred is the fact that valid Dugan indictments were obtained in the interim between the first scheduled trial and the actual trial. In his brief appel-

lant argues that if trial had begun on January 29, 1974, the Commonwealth could not have proceeded on the asserted faulty Dugan indictments. As will be discussed *infra* we question seriously the claim of invalidity of the 1973 Dugan indictments. More importantly, the principal charge upon which appellant was subject to incarceration was the murder indictment which would have in no way been tainted by any irregularity in the processing of the charges relating to the injury of Dugan.

In summary, the brevity of the delay, the neutral and perhaps unavoidable reason for the delay, the acquiescence to a continuance, the failure to demand a speedy trial until after the trial had begun, the inability to show any significant prejudice, convince us that appellant was not denied his right to a speedy trial.

## II. MOTION FOR THE DISMISSAL OF THE FEBRUARY TERM 1974 INDICTMENT

Appellant, in a somewhat related argument, contends that the February 1974 indictment charging him with an assault with the intent to kill one Norman Dugan should be dismissed and future prosecution barred on the theory that the procedures involved violated Pennsylvania Rules of Criminal Procedure 316(a) and 140(f).[8] Rule 316(a) provides that an indictment which is not returned against a defendant within a reasonable time *may* within

---

8. It is argued by the Commonwealth that the Rules of Criminal Procedure are not applicable because the charges relating to Dugan fall within the purview of the Juvenile Act. See Rule 1(a) of the Pennsylvania Rules of Criminal Procedure. Following the reasoning espoused by Mr. Justice Pomeroy in *Commonwealth v. Keefer*, 470 Pa. ——, 367 A.2d 1082 (filed November 24, 1976), it may be argued that anytime it is determined that the principal offense resulting from the criminal episode amounts to the crime of murder, the Juvenile Act is not applicable. *See* Section §§ 50–102 of the Juvenile Act, December 6, 1972, P.L. 1464, 11 P.S. §§ 50–101 (Supp.1976–77). We need not here, however, reach this question because we are of the view that, even assuming the applicability of Pennsylvania Rules of Criminal Procedure 316(a) and 140(f), the requested relief must be denied.

504

the court's discretion, be dismissed.[9] It is asserted that the February 1974 indictment charging the assault with intent to kill Norman Dugan was not returned within a reasonable time and that the trial court abused its discretion in not dismissing this indictment. The argument of appellant is premised on the fact that the July 1973 indictments concerning the victim Dugan did not satisfy the mandate of Rule 316(a) since they had allegedly been improperly certified to the Criminal Division. We are not prepared to accept the assumption that Rule 316(a) has been violated.

The obvious objective sought to be accomplished by Rule 316(a) was the prevention of prejudice to an accused which might result from the failure of the prosecution to bring the matter before a grand jury within a reasonable time after the arrest and the initial institution of the charges. Where there has been an attempt to have the grand jury pass upon the charges within a reasonable period of time, as was the case here, with regard to the July Dugan indictments, it would appear that the purposes of Rule 316(a) have been achieved. The Rule itself does not specifically require a finding that the indictment process (or the certification process) be without fault. Where an indictment is returned within a reasonable period of time, the fact that the indictment process is later found to be defective does not require a dismissal of the charges in the indictment under Rule

9. Although there have been several amendments to this Rule (amended June 8, 1973, effective July 1, 1973; amended February 15, 1974, effective on same date), the portion with which we are here concerned has remained unchanged. The rule in effect at the time appellant was arrested read:

Upon application and a showing that an indictment has not been found against a defendant within a reasonable time or that he has not been brought to trial within a reasonable time after indictment, the court may order dismissal of the prosecution or, in lieu thereof, make such other order as shall be deemed appropriate in the interests of justice . . . Adopted June 30, 1964, effective Jan. 1, 1965.

316(a). Instead, the appropriate remedy would depend upon the particular defect in the indicting process.

■■ Furthermore, even if we accept the appellant's supposition that the July Term 1973 indictments relating to Dugan are a nullity for purposes of Rule 316(a), we still do not believe that a dismissal of the charges is warranted. First, it is clear from the language of the Rule that a dismissal is within the sound discretion of the trial court and should not be imposed unless required by the interests of justice. *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968). Where, as here, the appellant was promptly placed on notice by the return of the July indictments that he was going to be called upon to face the charges stemming from the shooting of both Wilcox and Dugan, the interests of justice cannot be said to require a dismissal. Appellant cannot assign his loss of liberty to this allegedly defective procedure since his detainment was equally attributable to the homicide charges, the procedure of which he does not complain. It is also very significant that the indictments were quashed due to a procedural infirmity and not due to any finding of a substantive deficiency. We agree with the trial court that the relief sought was unwarranted and the refusal to grant said relief was not an abuse of discretion.

Rule 140(f) of Pennsylvania Rules of Criminal Procedure provides that an accused is entitled to a preliminary hearing within ten (10) days after the preliminary arraignment.[10] Specifically, appellant argues that a preliminary hearing was not conducted on the charges aris-

10. Rule 140(f) reads in pertinent part as follows:
 (f) When a preliminary hearing is not waived, the issuing authority shall:
 (1) fix a day and hour for a preliminary hearing which shall not be less than three nor more than ten days after preliminary arraignment unless extended for cause shown, unless the issuing authority fixes an earlier date upon request of the defendant or his attorney with the consent of the complainant and the attorney for the Commonwealth;

ing from the Dugan shooting until February 5, 1974, although he was arraigned on June 4, 1973, thus causing a blatant violation of the aforestated rule.

A careful study of the record, however, convinces us that this argument is at variance with the facts and we, therefore, hold that the hearing on June 15, 1973, substantially complied with the requirements of 140(f).

 Rule 140(f) was primarily designed to prevent prolonged custody of an accused prior to an independent judicial finding of the existence of probable cause. Under our procedure an individual can be arrested without a warrant where police authorities have determined that probable cause exists. *McCray v. Illinois.* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1966) ; *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) ; *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1973) ; *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972). However, it is imperative that the police judgment be reviewed by an independent judicial authority at the first reasonable opportunity.

" . . . it is the burden of the Commonwealth at a preliminary hearing to establish at least prima facie that a crime has been committed and the accused is the one who committed it. The hearing's principal function is to protect an individual's right against unlawful detention". *Commonwealth v. Mullen,* 460 Pa. 336, 341, 333 A.2d 755, 757 (1975).

*See also, Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 198 A.2d 565 (1964).

 The record clearly indicates that the June 15, 1973, certification hearing in the Juvenile Division dealt with the offenses relating to both Wilcox and Dugan. The testimony presented covered the entire criminal episode that occurred on May 31, 1973, and put appellant on notice as to what charges he would be obliged to face. Despite the fact that the juvenile petition which had

been filed pursuant to Sections 50–302 and 50–314 of the Juvenile Act, December 6, 1972, P.L. 1464, 11 P.S. §§ 50–101 (Supp.1976–77), failed to include Norman Dugan as a second complainant, all parties were aware that the appellant would be tried for the acts directed towards Dugan as well as towards the deceased. This fact is clearly discernible from the following colloquy between the District Attorney and the Court:

"MR. CONNARD (Assistant District Attorney): One other thing, as you heard, there was another boy shot at the same time, and there was an arrest by the Police Department, but no petition was filed for the shooting of Norman Douglas [sic]. I ask that that be certified, also.

THE COURT: Why don't you certify it and get it all tried down there by the jury at the same time?"

At the conclusion of the hearing the Court held the appellant over without bail for action by the Grand Jury. It was apparent that he considered the Commonwealth had made out a prima facie case as to the offenses relating to both victims since he certified the charges of the crimes of murder, assault with intent to kill, firearms violations and conspiracy. It cannot be doubted that the assult with intent to kill charge was in fact referring to the shooting of Dugan, despite the fact that his name was inadvertently excluded from the list of complainants on the original petition.[11] Under these cir-

11. The assault with intent to kill charge could not have been referring to the deceased Wilcox since the assault charge would have merged into the murder charge. The test of whether a crime merges into another is found in *Commonwealth v. Comber,* 374 Pa. 570, 584, 97 A.2d 343, 349 (1953) where we said, quoting from *Commonwealth ex rel. Moszezynski v. Ashe,* 343 Pa. 102, 104, 21 A.2d 920, 921 (1941):

"The true test of whether one criminal offense has merged in another is *not* (as is sometime stated) whether the two criminal acts are 'successive steps in the same transaction' but it is whether one crime *necessarily involves* another, as, for exam-

cumstances, we find that the hearing of June 15th provided substantial compliance with Rule 140(f) as to the Dugan charges.

In addition, it is to be noted that Rule 140(f), unlike Rule 316, does not provide the penalty which should be imposed in the event of a breach. Appellant urges that a dismissal is the appropriate remedy, relying upon an analogy to our treatment of a violation of Rule 130. *See, Commonwealth v. Doamaral*, 461 Pa. 517, 337 A.2d 273 (1975); *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Peters*, 453 Pa. 615, 305 A.2d 901 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). The weakness of this analogy is the failure of appellant to perceive the difference between an exclusionary rule and a sanction which would bar all further prosecution. In discussing the right to a speedy trial, the United States Supreme Court in *Barker v. Wingo, supra* asserted:

> The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. *Such a remedy is more serious than an exclusionary rule or a reversal for a new trial,* . . . (Emphasis added) *Id.*
> 407 U.S. at 522, 92 S.Ct. at 2188.

The effect of the application of an exclusionary rule is to deprive the Commonwealth of that evidence which it obtains as a result of a violation of the rule in question. Appellant, however, seeks a far more drastic response

ple, rape involves fornication, and robbery involves both assault and larceny. . . . " (Emphasis in original.)
It is clear that the crime of murder "necessarily includes" assault with intent to kill.

to the alleged violation, i. e., a termination of all further prosecution on the charge, even where he is unable to demonstrate a causal connection between any prejudicial event and the alleged irregularity. The inappropriateness of the requested sanction of dismissal is particularly blatant under the present factual posture. Here it is clear that, at best, there was an inadvertent error on the part of the Commonwealth in failing to include Dugan's name on the original petition which did not, in any way, prejudice the defense. We do not believe that the trial court abused its discretion in refusing to dismiss the charges for this minor technical defect in the juvenile petition.

### III. REQUEST FOR A NEW TRIAL

Although we have not been persuaded by any of the appellant's arguments urging dismissal of either the Dugan charges or all of the charges, we are compelled by the weight of recent decisions of this Court to reverse the decision of the trial court and to remand the matter for a new trial.[12] We conclude that appellant, 17 years of age at the time of his confession, was denied the "benefit of parental or interested adult guidance prior to giving his confession", in direct contravention of the rule of *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Smith*, 465 Pa. 310, 350 A.2d 410 (1975); *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974). For this reason, appellant's confession should have been suppressed.

The circumstances surrounding the confession of appellant are as follows: After appellant was arrested, he

12. Appellant has urged several grounds as the basis for the award of a new trial. In view of our agreement that a new trial must be awarded because of the absence of a showing of an effective waiver of the Fifth and Sixth Amendment rights by this minor defendant, we will not consider the other arguments posited.

was taken to the Police Administration Building and arrived there at approximately 11:00 P.M. on May 31, 1973. After spending approximately 55 minutes by himself in an interrogation room, appellant was given his *Miranda* warnings and questioned by a juvenile division officer assigned to assist in homicide cases. This questioning session which lasted until approximately 12:40 A.M., June 1, 1973, produced only an exculpatory statement. Appellant was then given a polygraph examination and further interrogated by the same juvenile officer. At approximately 2:20 A.M., appellant made an oral inculpatory statement in the presence of the juvenile officer and a homicide detective who had joined in the interrogation. This inculpatory statement was reduced to writing during a period which ended at 3:25 A.M. At 4:45 A.M., six hours after his arrest, appellant began a formal written inculpatory statement. During this period the appellant's father arrived at the Police Administration Building and was lead into the room in which his son was preparing the formal confession. The father witnessed the conclusion of the statement. At 6:45 A.M., in the presence of his father, appellant read the confession in its entirety into a tape recorder and signed each page as he completed reading it.

The thrust of our decisions in the *Chaney* and *McCutchen* line of cases requires that before a juvenile may waive his fundamental constitutional rights and respond to police custodial interrogation, it must be established that he has *at least* been afforded access to counsel or parental or interested adult guidance.[13] The burden of proving, by a preponderance of the evidence, a valid waiver of a constitutional right is on the Common-

13. Under the facts of this case we need not consider whether there are any circumstances which would justify a finding of an uncounselled waiver by a juvenile defendant, particularly where the youth is approaching the age of majority. See *Commonwealth v. Webster*, 466 Pa. 314, 326 n. 5, 353 A.2d 372, 378 n. 5 (1976).

wealth. *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A. 2d 892 (1975) ; *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). The two requisite elements of proof of such a waiver on the part of a minor defendant are a showing that, 1) the accused had access to the advice of an attorney, parent or interested adult *before an* effective waiver may be established, *see Commonwealth v. McCutchen, supra,* 463 Pa. at 92–93, 343 A.2d at 670,[14] and 2) that the consulted adult was informed as to the constitutional rights available to the minor. *See Commonwealth v. Starkes, supra,* 461 Pa. at 188, 335 A.2d at 703. It is uncontradicted in the record that at the crucial moment when appellant offered his first inculpatory oral and written statement he did not have "access to the advice of a parent, attorney, or other adult who was primarily interested in his welfare." It is undisputed that appellant's first access to the advice of an interested adult was provided only after six hours of questioning during which period he had already incriminated himself. Further, the Commonwealth did not establish that the father, at the time of his belated entrance, was in fact provided an opportunity to confer alone with his son or that he, the father, was in fact aware of the options available to appellant. On such a record, it is manifest that the Commonwealth has failed to establish that appellant executed an effective waiver of his rights.

We therefore reverse the judgments of sentence and award the grant of a new trial.

14. *See Commonwealth v. Webster, supra* at 378.
 It is clear from these cases that not only may the Commonwealth not interfere with the right of a minor suspect to consult with a parent or guardian throughout the interrogation process, more importantly, police officials must make a reasonable effort to provide an opportunity for the youthful accused to confer with and receive the benefit of counsel or an interested and informed adult guidance before permitting him to elect to waive these important constitutional rights. (Footnote omitted)

512

ROBERTS, J., joins Part I and Part III.

MANDERINO, J., concurs in the result in Part I and Part II and joins Part III.

POMEROY, J., filed a dissenting opinion in which JONES, C. J. and EAGEN, J., joined.

POMEROY, Justice (dissenting).

While I agree in the main with Parts I and II of the opinion of the Court, I must dissent from Part III and the grant of a new trial based thereon. The reasons for this position have been frequently stated heretofore. See *Commonwealth v. Chaney*, 465 Pa. 407, 409, 350 A.2d 829, 831 (1975) (dissenting opinion of Pomeroy, J., joined by Mr. Chief Justice JONES and Mr. Justice EAGEN), and cases there cited. I would therefore affirm the judgment of sentence.

JONES, C. J., and EAGEN, J., join in this dissenting opinion.