392 A.2d 820

**COMMONWEALTH of Pennsylvania**

v.

**Gary THOMAS, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1978.

Decided Oct. 20, 1978.

Myra J. Werrin Sacks, Assistant Public Defender, Harrisburg, for appellant.

J. G. Penny, with him Reid H. Weingarten, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

Appellant, Gary Thomas, was tried by a judge in the Court of Common Pleas of Dauphin County and found guilty of aggravated assault. Post-trial motions were denied, and appellant was sentenced to an indeterminate term at the State Correctional Institution at Camp Hill. Appellant filed this appeal, and we affirm the decision of the lower court.

Appellant, age 15, was an abscondee from a youth development center and was staying with his mother. At that time, on October 30, 1976, Arthur Prinz was beaten near his home. At approximately 11:00 a. m. on October 31, 1976, police arrived at the Thomas home to transport appellant to headquarters. Appellant's mother was informed that the police would be questioning Gary, that she could be present, and that they would contact her. Police read the appellant the *Miranda* warnings while en route to the Dauphin County Prison.

Later that day, police returned to the Thomas home and further explained the situation to appellant's mother. Between 9:00 a. m. and 10:00 a. m. on November 1, 1976, police made several attempts to call Mrs. Thomas to inform her of the upcoming questioning of her son at the Dauphin County Prison. When Mrs. Thomas did not answer, the police proceeded to the prison and called upon a prison counselor to speak to appellant before the interrogation began. The counselor spoke with Gary for about five minutes, while the police remained in the same room, but at the opposite end of a cafeteria-like table. The counselor and appellant were alone only while one policeman took a phone call outside the room and another stood outside the door. Appellant was read his *Miranda* warnings again, they were reviewed, and

the interrogation began. It was during this 15-minute questioning session that appellant made an inculpatory statement.

At the suppression hearing, the lower court judge refused to suppress the incriminating statement made to the police at the Dauphin County Prison. The issue before us is whether the judge erred in denying the motion to suppress because the juvenile was in detention and may not have voluntarily waived his constitutional rights due to his alleged failure to consult with a parent, attorney or other interested adult.

Waiver of the constitutional privilege against self-incrimination and the right to counsel must be a voluntary, knowing and intelligent decision. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). When a juvenile is involved, the circumstances surrounding the waiver must be even more carefully scrutinized to insure the proper standards are met. *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). In Pennsylvania, a series of decisions has announced that an attempted waiver by a juvenile of his fifth and sixth amendment rights during a custodial interrogation will not be effective "absent a showing that a juvenile had an opportunity to consult with an interested and informed parent or adult or counsel before he waived his *Miranda* rights . . ." *Commonwealth v. Chaney,* 465 Pa. 407, 409, 350 A.2d 829, 830 (1975).[1] In these cases, the Commonwealth has the burden of proving that the juvenile waived his rights voluntarily. *Commonwealth v. Hailey,* 470 Pa. 488, 368 A.2d 1261 (1977). The Commonwealth must prove at least three things in order to meet its burden: first, that the adult involved was one interested in the welfare of the juvenile accused; second, that the adult

1. See also, *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372 (1975); *Commonwealth v. Riggs,* 465 Pa. 208, 348 A.2d 429 (1975); *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974); *Ruth Appeal,* 239 Pa.Super. 453, 360 A.2d 922 (1976).

was aware of the rights of the accused; and third, that the minor had an opportunity to consult with the adult. *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977).

Appellant contends, in this case, that the Commonwealth has not met its burden because the prison counselor who spoke to Thomas was not an adult interested in his welfare. We find this contention to be without merit. The counselor involved here had a history of employment in juvenile and other criminal justice work.[2] The nature of his employment made him well aware of the *Miranda* warnings and their significance in appellant's case. Finally, he did have an opportunity to discuss the situation with appellant before the interrogation began, even though there was not total privacy during their session. There was no evidence of any abusive or coercive tactics utilized by the police during appellant's detention or interrogation. Also, the police had made a reasonable effort to contact Mrs. Thomas to inform her of the interrogation prior to the session.

We believe these facts distinguish this case from the cases relied upon by appellant in his brief. For example, in *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974), the defendant's mother indicated her willingness to follow her son to the station, but was ignored. Police interrogated the defendant without a prior consultation with a parent, attorney, or other interested adult, and the court held that defendant's inculpatory statement should have been suppressed. Similarly, in *Commonwealth v. Lee*, 470 Pa. 401, 368 A.2d 690 (1977), defendant's parents were not phoned until *after* the questioning took place. The confession was suppressed.

In contrast, this case seems more closely analogous to *Commonwealth v. McFadden*, 470 Pa. 604, 369 A.2d 1156 (1977). There, defendant was arrested in the presence of his

2. The counselor worked as a counselor at the Dauphin County Prison, where he held individual and group inmate counselling. Prior to that assignment, he had worked as a counselor for the Camp Hill Project on Community Alternatives and at the Dauphin County Child Care Agency. He had also done county detective work.

mother, who accompanied him to the station. They were alone for ten minutes, after which neither asked to see the other. The rule was applied, and the court found it to be satisfied because they had the opportunity to consult and understood the constitutional rights involved, due to previous dealings with police. Hence in the case before us, although appellant's mother was not available to meet with him, the prison counselor, who may have been more capable of explaining appellant's rights to him, did speak with him prior to the questioning. Although the counselor's "concern" might not have had the personal depth of that of a parent, there is no indication he was not interested in the welfare of appellant.

Since we find that the Commonwealth has met its burden of proof for the juvenile's waiver of his *Miranda* rights, we must now consider the voluntariness of the statements made by using the totality of the circumstances test, applicable to the voluntariness of confessions generally. *Commonwealth v. McFadden, supra; Commonwealth v. Moses,* 446 Pa. 350, 287 A.2d 131 (1971). Appellant appeared normal in all respects to the police and the counselor involved in this case. Although he was only fifteen at the time of the incident, appellant had been involved with the police before. On this occasion, the police read him the *Miranda* warnings twice before he answered questions, and appellant indicated he understood the warnings. There was no evidence of abusive conduct. Based on these facts, we conclude that the waiver and confession were knowingly, intelligently, and voluntarily entered.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion in which CERCONE, J., joins.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I believe that appellant's confession should have been suppressed, and that we should therefore order a new trial.

–1–

In deciding whether a confession should be suppressed, a court may choose between two procedures, or rules. The court may only require that the prosecutor prove that the confession was intelligent and voluntary; in deciding whether the prosecutor has done this, the court will consider evidence of the character of the defendant and of the circumstances in which the confession was obtained. Or the court may impose an additional, and preliminary, requirement, to the effect that the evidence that the confession was intelligent and voluntary will not be considered unless the prosecutor first proves that before the confession was obtained, certain things were done; if the prosecutor does not prove that those things were done, that will end the matter, and the confession will be suppressed. Because of its drastic nature, this procedure is often called a *per se* rule.

For some time the courts adopted the first of these two possible procedures. Many persons argued that this was unfair to defendants, and that the courts should adopt a *per se* rule. The gist of their argument was that as a practical matter it was not possible to recreate in the court room the circumstances under which confessions had been obtained; in fact, it was said, often the circumstances had been such as to overbear a defendant. This argument prevailed when the United States Supreme Court held in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the prosecutor must prove that before a person in custody was questioned, he was told of his right to remain silent and to have the assistance of counsel, and that if the prosecutor did not prove this, the confession would be suppressed. "No amount of circumstantial evidence," said the Court, would suffice to overcome the effect of the failure to tell the accused his rights. 384 U.S. 471–72, 86 S.Ct. 1602.

The question then arose whether in the case of a confession obtained from a juvenile the courts should impose still another additional, and preliminary, requirement. In other words: Should the prosecutor have to prove, first, that before a juvenile was questioned, he was told of his right to

remain silent and to have the assistance of counsel, and also, that certain other things were done? Recently a majority of our Supreme Court has decided that the prosecutor must prove that certain other things were done, and that if he did not, the confession would be suppressed. *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372 (1976); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975).

I mention this history because the majority opinion, it seems to me, blurs the fact that what we are dealing with is a *per se* rule. Thus the majority says, "In these cases, the Commonwealth has the burden of proving that the juvenile waived his rights voluntarily." Majority opinion at 821. In a sense, of course, this statement is correct; but it is also misleading. The statement is correct in the sense of indicating that the *reason* for adopting a *per se* rule is that the court hopes thereby to ensure that confessions will be voluntary. The statement is misleading in that it does not point out that this *reason* will never control, or affect, the *operation* of a *per se* rule. If the particular *per se* requirement is not met, the court will suppress the confession; the court will not ask—it will in a sense not care, for the issue will be irrelevant—whether the confession was voluntary, and "[n]o amount" of evidence that the accused knew all about his rights to remain silent and to have counsel, and that he was in no respect abused or overborne, will suffice to save the confession. Thus, the majority's observation that "[t]here was no evidence of any abusive or coercive tactics by the police," Majority opinion at 821, is entirely irrelevant to the single question we must decide, which is, Were the *per se* requirements of the Supreme Court's rule met?[1]

1. The Commonwealth recognizes that this is the single question, although it adds that it "would like to relate its opposition to a rule which would make all juvenile confessions obtained without the benefit of interested adult guidance *per se* inadmissible," going on to cite the dissenting opinions in *Commonwealth v. Webster, supra,* and *Commonwealth v. Chaney, supra.* Without doubt, the dissenting opinions are forcefully expressed, and much may be said both for and against a *per se* rule. However, so far as this court is concerned, given the Supreme Court's recent decisions, the issue is closed.

–2–

In deciding whether the *per se* requirements of the Supreme Court's rule were met, we are hampered by the fact that there has been no uniform statement of those requirements. I believe, however, that an examination of the cases will show that the requirements may be summarized as follows: First, the Commonwealth must prove that "the accused had access to the advice of an attorney, parent or interested adult *before* an effective waiver may be established." *Commonwealth v. Hailey,* 470 Pa. 487, 511, 368 A.2d 1261, 1273 (1977). In order to satisfy this requirement, the Commonwealth must prove that the police made "a reasonable effort" to provide such access, and further, that they did not "interfere" with the ensuing consultation. *Commonwealth v. Webster, supra,* 466 Pa. at 326, 353 A.2d at 377. Second, the Commonwealth must prove that "the consulted adult was informed as to the constitutional rights available to the minor." *Commonwealth v. Hailey, supra,* 470 Pa. at 511, 368 A.2d at 1273; *Commonwealth v. Starkes, supra.* Here, the Commonwealth failed to meet the first of these two requirements, in several respects.

–a–

The Commonwealth did not prove that the police made "a reasonable effort" to provide appellant access to the advice of his mother. To the contrary, the evidence shows that if the police did not actually preclude that access, at least they made it much more difficult for appellant to obtain than they need to have done.

When Officer Kohr went to appellant's home, he had a police report that appellant had been involved in the assault at issue here; he had therefore already decided to question appellant. N.T. 9, 12.[2] When the officer got to appellant's home appellant and his mother were there. N.T. 11. It is therefore clear that the officer could have told appellant and his mother of appellant's constitutional rights and have

---

2. This and ensuing references are to the transcript of the suppression hearing.

permitted them to consult with each other. That is what the police did in *Commonwealth v. McFadden,* 470 Pa. 604, 369 A.2d 1156 (1977), where the ensuing confession was held admissible. Instead, the officer gave appellant no chance to consult with his mother but took him directly to the county prison; appellant was told of his constitutional rights on the way, in the police car. N.T. 11–12. The officer did not take appellant's mother along, nor even ask her whether she would go. N.T. 12.

–b–

The foregoing conduct by the police might not matter if later, while appellant was in the county prison, the police had afforded appellant "access to the advice of an attorney, parent or interested adult." *Commonwealth v. Hailey, supra.* The majority says the police did do that, and argues that Ralph Reed, the counselor at the county prison, was an "interested adult." I submit that this argument is not persuasive.

It is evident that the Supreme Court's requirement that the juvenile have access to the advice of "an attorney, parent or interested adult" can only be satisfied if the three persons thus identified are equally concerned with the juvenile's welfare. Of course, exact equality is not required; a parent and an attorney will necessarily regard the juvenile, and he will regard them, with different eyes, simply because the relationship of one is a blood relationship, the other's, professional. The point, however, is that the degree of concern for the juvenile's welfare must be equal in the intensity with which the juvenile's present position, and his possible courses of action, are considered, whether the person undertaking that consideration and advising the juvenile accordingly has a blood relationship with the juvenile, a professional relationship, or some other relationship, comprised in the description "interested adult." Any other interpretation of the Supreme Court's requirement of an "interested adult" would make no sense, for it would read the Court as saying that its requirement could be satisfied in

either of two, mutually inconsistent, ways: either by affording the juvenile access to one of two persons vitally interested in his welfare—an attorney or parent—or by affording him access to a person only casually interested.

These considerations are simply a matter of common sense. They may be more formally stated by reference to the common rule of construction, frequently applied in interpreting a statute, that "[g]eneral words [here, 'interested adult'] shall be construed to take their meanings and be restricted by preceding particular words [here, 'attorney' and 'parent']." 1 Pa.C.S.A. § 1903(b). *And see Corry v. Corry Chair Co.*, 18 Pa.Super. 271, 277 (1901). In addition, however, it is apparent from the evolution of the *per se* rule that by "interested adult" the Court refers to an adult whose interest in the juvenile is comparable to that of an attorney or parent. Thus, in *Commonwealth v. Starkes, supra,* which was the first case to announce the *per se* rule, the Court cited and quoted from *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), where it was said, in suppressing a confession, that the juvenile should have been advised of his rights by "someone concerned with securing him those rights . . . . A lawyer or an adult relative or friend could have given the [juvenile] the protection which his own immaturity could not." 370 U.S. at 54, 82 S.Ct. at 1213; quoted in *Commonwealth v. Starkes, supra* at 186, 335 A.2d at 701.

Here, it cannot be maintained that the prison counselor was in any sense a "friend" of appellant's or someone concerned with securing appellant his rights to a degree comparable to the concern to be expected of an attorney or parent. Before becoming a prison counselor, Mr. Reed had been a county detective, and before that a probation officer and police officer. N.T. 19–20. His only contact with appellant had been some six months before, at Cornwells Heights, N.T. 21, and that contact had not involved any counseling, N.T. 21, but had been very limited, N.T. 24 ("Gary [appellant] could have asked me a question at one point or another"). When speaking with appellant, he made

no effort to secure either privacy or sufficient time for thoughtful discussion (this aspect of the case is discussed further, *infra*); he simply told appellant that "he should cooperate with the police and tell them what happened." N.T. 23. There is no evidence to suggest that he discussed with appellant the possible or probable consequences of such action, or advised him regarding other possible courses of action.

Furthermore, in deciding whether an adult is an "interested adult" within the *per se* rule, a court must consider how the adult must have appeared to the juvenile; for unless the juvenile trusts the adult, as he may be expected to trust a parent or attorney, he is unlikely either to seek or to follow the adult's advice. Here, as a prison counselor, Mr. Reed must have appeared to appellant as simply another law enforcement officer. As mentioned, appellant had only seen Mr. Reed before at Cornwells Heights. Also, Mr. Reed came to speak to appellant from another part of the prison at the request of, and in the presence of, the police. N.T. 22 *et seq.* Indeed, the record makes plain that in fact appellant did not regard Mr. Reed as a trusted advisor. When asked by the lower court how appellant had acted, Mr. Reed replied, like a "ditty-bopper", explaining: "Gary sometimes acts like, role-plays, like what happened, like this, what happened, this is cool, this thing." N.T. 27.

—c—

Finally, if one assumes for the sake of discussion that it does not matter that the police made no reasonable effort to afford appellant access to his mother, and also that the prison counselor was an "interested adult", still the requirements of the *per se* rule were not satisfied; for the police made no reasonable effort to provide appellant access to the prison counselor, and they interfered with such access as was provided. *Commonwealth v. Webster, supra.*

When Officer Kohr asked Mr. Reed as prison counselor to speak to appellant, he did not afford appellant and Mr. Reed any privacy. The officer described what he did, as follows:

Q. Was Mr. Reed already there when you got there?

A. Mr. Reed was in the prison.

Q. Was Mr. Reed in the cell speaking with Gary Thomas?

A. No. I waited until Mr. Reed came before starting the conversation.

Q. You did not leave the room at all?

A. No.

Q. You remained in the open—the enclosed day room of Dauphin County Prison which is approximately fifteen feet by fifteen feet, is that correct?

A. Yes.

Q. And at no time did Mr. Reed speak with Gary Thomas privately out of your earshot?

A. Not that I can recall.

Q. Did you give them an opportunity or did you say would you like to talk this over yourselves?

A. Not that I can recall.

Q. So the entire time you were in the small enclosed portion of the Dauphin County Prison?

A. We were sitting together, right.

Q. How long did Mr. Reed confer with Gary Thomas before you took your statement or before Gary offered this information to you?

A. When Mr. Reed was talking with Gary while I was sitting there I didn't hear too much of the conversation. I think me and Officer Ballard that was there, this conversation took about fifteen minutes.

N.T. 14

Later the officer supplemented this testimony, as follows:

Q. Officer Kohr, just one more time. You spoke with Gary Thomas at the prison on November the 1st at noon approximately fifteen to twenty minutes, is that right?

A. Right.

Q. During the first portion of that time you were present, you and Mr. Reed came to the cell area and you were already present, is that right, and did he at

that time speak in the presence of you and Gary Thomas and Officer Ballard to the juvenile?

A. He did.

Q. And that was approximately five minutes or so?

A. Give or take a few minutes, yes. And while I was sitting there the warden came to say I had a phone call on the line and I went and talked—somebody pertaining to Frank Griffin, that's when Ralph Reed was there.

Q. But, Officer Ballard, did he accompany you to take that telephone call?

A. No.

Q. He was present in the cell area, is that right?

A. No, he wasn't.

Q. Where was he?

A. He was outside.

Q. He wasn't seated—

A. We sat at the table. When I said the three of them, I meant—

Q. He was outside the little chamber area?

A. Yes.

N.T. 17–18.

On redirect, the officer said:

Q. There was one uncertain area in your testimony. When you received the telephone call, Mr. Reed and Mr. Thomas were alone?

A. They were alone.

N.T. 18.

This testimony cannot be read as satisfying the Commonwealth's burden of proving that it met the requirements of the *per se* rule. *Commonwealth v. Hailey, supra; Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). It shows beyond doubt that appellant and Mr. Reed were afforded only the briefest access to one another, and that even that access was without any privacy, but was interfered with by the presence of the police.

The order of the lower court refusing to suppress appellant's confession should be reversed, and the judgment of sentence vacated and the case remanded for new trial.

CERCONE, J., joins in this opinion.